**Belinda BUCK, Appellant,**

v.

**Philip S. BLUM, Individually and d/b/a Houston Neurological Institute, and Kimberly E. Monday, Individually and d/b/a Houston Neurological Institute, Appellees.**

No. 14–03–00358–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 10, 2004.

Juliet Katherine Stipeche, Jeffrey B. McClure and Michael C. Feehan, Houston, for Appellees.

Russell D. Weaver, Addison, for Appellant.

Panel consists of Chief Justice ADELE HEDGES and Justices ANDERSON and SEYMORE.

## OPINION

ADELE HEDGES, Chief Justice.

Belinda Buck sued Dr. Albert Yen together with Dr. Philip Blum and Dr. Kimberly Monday, owners of Houston Neurological Institute, based on an assault and battery allegedly occurring during the course of a neurological examination. This appeal involves only her claims against the employers based on respondeat superior and negligence.[1] The trial court granted summary judgment against Buck's respondeat superior claim and dismissed her negligence claim with prejudice. We affirm.

### Background

In her deposition, Buck testified that she went to HNI for a neurological examination that was conducted by Yen. She then stated

> But the next thing I remember is [Yen] wanting to examine, with my hands behind my back, to examine the strength of my hands. He asked me to put—

---

1. These claims were severed from those against Yen.

open my hands behind my back. Therefore, I did. He stepped to the side of me towards the angle here (indicating) where I could just barely see him. He put an object in my hand and asked me to squeeze. I did. It was a cold metal object. He did my left hand, my right hand. [¶] He said he wanted me to do it again. That's when he put his penis in my left hand and told me to squeeze.

Based on this alleged incident, Buck asserted claims against Yen and appellees. In response to her respondeat superior claim, appellees filed a motion for summary judgment asserting that Yen was not acting in the course and scope of his employment at the time of the alleged assault. In response to the negligence claim, appellees moved to dismiss for failure to file an expert report under the Texas Medical Liability and Insurance Improvement Act. TEX.REV.CIV. STAT. ANN. art. 4590i (Vernon Supp.2003) (repealed 2003) (current version at TEX. CIV. PRAC. & REM.CODE ANN. § 74.001–.507 (Vernon Supp.2004)). The trial court granted summary judgment against the respondeat superior claim and dismissed the negligence claim with prejudice. On appeal, Buck contends both that she presented proof Yen was acting in the course and scope of his employment and that appellees failed to present proof he was not. She further argues she was not required to file an expert report because her claim is not a "health care liability claim" under the Act.

### Respondeat Superior.

■ In her first issue, Buck contends that the trial court erred in granting summary judgment against her respondeat superior claim. In considering this issue, we utilize the normal standards of review for traditional summary judgments. *See* TEX.R. CIV. P. 166a; *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). A defendant, as movant, is entitled to summary judgment if it (1) disproves at least one element of plaintiff's theory of recovery, or (2) pleads and conclusively establishes each essential element of an affirmative defense thereby rebutting the plaintiff's cause of action. *Wilie v. Signature Geophysical Servs., Inc.*, 65 S.W.3d 355, 359 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). As a general rule, there is no duty to control the conduct of another. *Ginther v. Domino's Pizza, Inc.*, 93 S.W.3d 300, 303 (Tex.App.-Houston [14th Dist.] 2002, pet. denied) (citing *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex.1983)). However, an employer may be held liable for the tortious acts of an employee if the acts are within the course and scope of employment. *See Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex.1998). This requires proof that the employee is acting (1) within the general authority granted by the employer, (2) in furtherance of the employer's business, and (3) for the accomplishment of an object for which he is employed. *See Mata v. Andrews Transp., Inc.*, 900 S.W.2d 363, 366 (Tex.App.-Houston [14th Dist.] 1995, no writ).

■ The typical respondeat superior claim involves an allegation of negligence on the part of the employee. *See, e.g., Sampson*, 969 S.W.2d 945 (concerning allegations of negligent medical treatment); *Mata*, 900 S.W.2d 363 (concerning alleged negligence resulting in car accident). The present case, however, involves an allegation of assault, an intentional tort. As the Texas Supreme Court has observed:

It is not ordinarily within the scope of a servant's authority to commit an assault on a third person.... Usually assault is the expression of personal animosity and is not for the purpose of carrying out the master's business. [¶] "[W]hen the servant turns aside, for however short a time, from the prosecution of the mas-

ter's work to engage in an affair wholly his own, he ceases to act for the master, and the responsibility for that which he does in pursuing his own business or pleasure is upon him alone."

*Texas & P. Ry. Co. v. Hagenloh,* 151 Tex. 191, 247 S.W.2d 236, 239, 241 (1952) (quoting *Galveston, H. & S.A. Ry. Co. v. Currie,* 100 Tex. 136, 96 S.W. 1073 (1906)).[2] Additionally, courts consider whether the assault was so connected with and immediately arising out of authorized employment tasks as to merge the task and the assaultive conduct into one indivisible tort imputed to the employer. *See, e.g., Durand v. Moore,* 879 S.W.2d 196, 199, 201 (Tex. App.-Houston [1st Dist.] 1994, no writ) (citing *Houston Transit Co. v. Felder,* 146 Tex. 428, 208 S.W.2d 880, 882 (1948)).[3]

■ In the present case, Buck contends both that appellees failed to present summary judgment proof establishing that Yen's actions were not in the course and scope of his employment and that she provided proof that his actions were in the course and scope. For proof that Yen was not acting in the course and scope of his employment, we need look no further than Buck's own allegations. A plaintiff may indeed plead herself out of court if she alleges facts that negate her cause of action. *See, e.g., Saenz v. Family Sec. Ins. Co. of Am.,* 786 S.W.2d 110, 111 (Tex.App.-San Antonio 1990, writ denied) (holding plaintiff's respondeat superior pleading negated course and scope element where factual allegations demonstrated employee was not acting in furtherance of his duties when he committed fraud).

■ Here, Buck pleaded that during a neurological examination, Yen placed his penis in her hand instead of using the metal weight he had used previously. Buck contends that since the procedure itself was part of the examination, and thus within the scope of Yen's authority, the use of Yen's body part was simply an inappropriate exercise of the delegated duty. While it is undisputed Yen's alleged action was inappropriate, it cannot be fath-

---

**2.** The *Hagenloh* court went on to explain that an assault could be considered in the course and scope of employment when the nature of the employment necessitated the use of force (such as the duty to guard property) so that the use of force may be in furtherance of the employer's business even if more force than necessary is applied. 247 S.W.2d at 239.

**3.** In *Durand,* the court upheld a respondeat superior finding where a club bouncer assaulted a complaining customer. 879 S.W.2d at 200. The court determined that there was sufficient evidence to demonstrate that the employee was simply "overzealous" in performing his authorized duties. *Id.* In *Frito-Lay, Inc. v. Ramos,* the court upheld a respondeat superior verdict where a snack company employee shoved a customer while attempting to take the company's merchandise rack from the customer's store after the customer stated he no longer wanted to carry the company's products. 770 S.W.2d 887, 889 (Tex.App.-El Paso 1989), *rev'd on other grounds,* 784 S.W.2d 667 (1990). In *Fisher v. Carrousel Motor Hotel, Inc.,* the court held a hotel manager was acting in the course and scope when he refused to allow a black man to eat in the hotel restaurant because of the hotel's policy of discrimination. 424 S.W.2d 627, 631 (Tex. 1967).

On the other hand, in *Green v. Jackson,* the court held that it was not in course and scope for an employee to fight with a customer over a personal debt. 674 S.W.2d 395, 399 (Tex. App.-Amarillo 1984, writ ref'd n.r.e.). In *Tierra Drilling Corp. v. Detmar,* the court held that it was not in course and scope for a supervisor to assault an employee because the supervisor disliked Texans. 666 S.W.2d 661, 662 (Tex.App.-Corpus Christi 1984, no writ). And in *McCord v. Southern Distributing Co.,* it was held not to be in the course of employment for a company's "good will man" to assault a customer. 356 S.W.2d 350, 353 (Tex.Civ.App.-Austin 1962, no writ). The court noted the employee's title refuted any inference that he was authorized to use force in the performance of his duties. *Id.*

omed that the action was in furtherance of the employer's business or for the accomplishment of an object for which he was employed. *See Mata,* 900 S.W.2d at 366. At the very moment Yen placed his body part in her hand (assuming he did), he was acting in his own prurient interest and ceased to be acting for the employer. The neurological examination at that point was only a pretense or a means for Yen's inappropriate personal gratification. Nor can it be said the assault was so connected with and immediately arising out of Yen's employment tasks as to merge the activities into one indivisible tort. *See Durand,* 879 S.W.2d at 199, 201. A club bouncer has an inherently confrontational job that may well require physical force; whereas, neurology is not an inherently sexual profession and never requires the action allegedly perpetrated by Yen. As a matter of law, Yen's alleged conduct did not arise out of the course and scope of his employment, and, thus, his employers cannot be held liable under respondeat superior.

▬ Buck additionally contends she presented evidence, in the form of Yen's answers to interrogatories, to show he was acting in the course and scope of his employment. However, a party's answers to interrogatories can only be used against that party and not against another party, including a codefendant. *See* TEX.R. CIV. P. 197.3. Furthermore, Yen denied what Buck accused him of doing.[4] Therefore, his statement in the interrogatory answers that he was acting in the course and scope does not suggest that the alleged inappropriate touching was in the course and scope. Thus, we find as a matter of law that Buck has failed to present proof sufficient to raise a fact issue. Accordingly,

the trial court did not err in granting summary judgment on the respondeat superior claim, and Buck's first issue is overruled.

### Negligence

▬ In her second issue, Buck contends that the trial court erred in dismissing her negligence claim because it was not a "health care liability claim" under the Texas Medical Liability and Insurance Improvement Act. TEX.REV.CIV. STAT. ANN. art. 4590i (Vernon Supp.2003) (repealed 2003) (current version at TEX. CIV. PRAC. & REM.CODE ANN. § 74.001–.507 (Vernon Supp.2004)). A dismissal under 4590i is generally reviewed under an abuse of discretion standard. *See, e.g., Ponce v. El Paso Healthcare Sys., Ltd.,* 55 S.W.3d 34, 36 (Tex.App.-El Paso 2001, pet. denied). However, to the extent resolution of this issue requires interpretation of the statute itself, we review under a de novo standard. *See id.* The act defines "healthy care liability claim" as follows:

> "Health care liability claim" means a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care or health care or safety which proximately results in injury to or death of the patient, whether the patient's claim or cause of action sounds in tort or contract.

TEX.REV.CIV. STAT. ANN. art. 4590i, § 1.03(a)(4) (repealed). In determining whether a particular case presents a health care liability claim, we must examine the underlying nature of the allegations. *See Bush v. Green Oaks Operator, Inc.,* 39 S.W.3d 669, 672 (Tex.App.-Dallas

---

4. In response to Buck's pleadings, Yen entered a general denial. The interrogatories propounded by Buck do not ask Yen for his version of events. Buck does not point to any place in the record, nor has our review revealed any, where Yen admitted any touching as alleged by Buck.

2001, no pet.) (citing *Sorokolit v. Rhodes,* 889 S.W.2d 239, 242 (Tex.1994)). In doing so, we are not bound by the party's own characterization of the claims. *See Ponce,* 55 S.W.3d at 38. Generally, a cause of action will be considered a health care liability claim if it is based on a breach of a standard of care applicable to health care providers. *Bush,* 39 S.W.3d at 672. The act or omission complained of must have been an inseparable part of the rendition of medical services. *Id.*

Several courts have considered the issue of whether allegations stemming from an assault by another *patient* should be considered a health care liability claim. *See, e.g., Healthcare Ctrs. of Tex., Inc. v. Rigby,* 97 S.W.3d 610 (Tex.App.-Houston [14th Dist.] 2002, pet. denied); *Zuniga v. Healthcare San Antonio, Inc.,* 94 S.W.3d 778 (Tex.App.-San Antonio 2002, no pet.); *Rubio v. Diversicare Gen. Partner, Inc.,* 82 S.W.3d 778 (Tex.App.-Corpus Christi 2002, pet. granted); *Bush,* 39 S.W.3d 669. However, the parties cite to no cases considering whether an assault by a treating physician can result in a health care liability claim, nor have we found any such cases. Each of the cases addressing attacks by fellow patients concluded that the potential liability was a matter of premises liability (or other general negligence theory) and not a health care claim. *See Rigby,* 97 S.W.3d at 620; *Zuniga,* 94 S.W.3d at 783; *Rubio,* 82 S.W.3d at 783; *Bush,* 39 S.W.3d at 672–73. However, these cases emphasized that the claims did not depend on any standard of care owed to a patient but instead alleged a more general duty such as the duty to warn of an unsafe condition or known risk. For example, in *Rigby,* the patient committing the assault was a "known sexual deviant." 97 S.W.3d at 620. Further, in *Rigby* and *Zuniga,* the courts noted the language in the Act regarding departures from standards regarding patient safety; however, both courts suggest even lapses in patient safety must be tied to the rendition of medical services and the standards of safety within the health care industry in order to be covered by the Act. *See Rigby,* 97 S.W.3d at 620; *Zuniga,* 94 S.W.3d at 783.[5]

■ In her live pleading at the time of the dismissal, Buck alleged that appellees were negligent in (1) failing to properly supervise Yen and (2) failing to institute or follow procedures that would reduce the potential for assault, particularly such as requiring a second staff member to be present during an examination. Essentially, these claims allege that appellees violated the standards of care related to supervision of a medical doctor performing a medical examination and the institution of procedures governing medical examinations. Thus, we interpret these claims as relating to medical care and constituting health care liability claims as defined by the Act. *See Henry v. Premier Healthstaff,* 22 S.W.3d 124, 127 (Tex.App.-Fort Worth 2000, no pet.) (holding claims against hospital for negligent training, instruction, and supervision of staff member who was not a health care provider constituted health care liability claims).[6] When a

---

**5.** We further note the current version of the Act defines "health care liability claim" even more inclusively:

"Health care liability claim" means a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative

services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

Tex. Civ. Prac. & Rem.Code Ann. § 74.001(a)(13).

**6.** Our resolution of this issue is not inconsistent with our resolution of the respondeat superior issue above. Although Yen's alleged

claim falls under the Act, the plaintiff is required to furnish an expert report within 180 days of filing the claim or face dismissal with prejudice (as the court did here). *See* TEX.REV.CIV. STAT. ANN. art. 4590i § 13.01(d)-(e) (repealed 2003). Buck filed no expert report. Accordingly, the trial court did not err in dismissing the claims for failure to fulfill the Act's requirements. Buck's second issue is overruled.

The trial court's judgment is affirmed.

assaultive conduct would certainly not be considered an inseparable part of the rendition of medical care, *see Bush,* 39 S.W.3d at 672, the allegations against appellees, that they failed to supervise or institute procedures governing a medical doctor's performance of a medical examination, are by their very nature inseparable from the rendition of medical care.