In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-05-00148-CR


______________________________




JAMES EDWARD SMITH, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 202nd Judicial District Court


Bowie County, Texas


Trial Court No. 04-F-0234-202




 




Before Morriss, C.J., Ross and Carter, JJ.


Memorandum Opinion by Justice Ross



MEMORANDUM OPINION



 James Edward Smith appeals from his conviction by a jury for aggravated
kidnapping. With one enhancement, Smith was sentenced to life imprisonment. Smith
contends that he was denied his constitutional right to effective assistance of counsel and
that the trial court erred by admitting a "pen packet" from Mississippi. 

 The evidence showed that, on the occasion in question, N.H., a fifteen-year-old
female child, was at a friend's house when Smith entered the residence at about
11:30 p.m., wearing a hat with camouflage netting, and wielding a knife. Smith forced
N.H., by threatening her with the knife, away from the home to a nearby wooded area
where he sexually assaulted her repeatedly. Near dawn, Smith walked N.H. back to the
house from which he had abducted her. N.H. testified that Smith did not threaten her again
after they left the woods and that, on the way back to the house, he held her arm and
apologized to her. The path they took back to the house led them through an apartment
complex, and Smith threw away the knife, as well as the hat with the camouflage netting
he had been wearing, before they went through that complex. Although the record is
sparse on this point, it appears Smith took N.H. to the back yard of her friend's house and
left her there, where she was promptly found by her friend and neighbors. Police were
there, and they very quickly found Smith, hiding in a doghouse at his own residence.

 Smith's first points of error are all directed at ineffective assistance of counsel. The
standard of testing claims of ineffective assistance of counsel is set out in Strickland v.
Washington, 466 U.S. 668 (1984). To prevail on this claim, the appellant must prove by
a preponderance of the evidence (1) that counsel's representation fell below an objective
standard of reasonableness and (2) that the deficient performance prejudiced the
appellant's defense. Id.; Rosales v. State, 4 S.W.3d 228, 231 (Tex. Crim. App. 1999). To
meet this burden, the appellant must prove that counsel's representation fell below the
standard of prevailing professional norms and that there is a reasonable probability that,
but for counsel's deficiency, the result of the trial would have been different. Tong v. State,
25 S.W.3d 707, 712 (Tex. Crim. App. 2000). (1) 

 Smith first contends trial counsel was ineffective because he did not seek a jury
instruction on mitigation of punishment for voluntarily releasing the victim in a safe place. 
At the punishment stage of a trial where the defendant has been found guilty of aggravated
kidnapping, the offense is a felony of the second degree--with a maximum imprisonment
of twenty years--instead of a felony of the first degree--with a maximum imprisonment of
life--if the defendant proves by a preponderance of the evidence that he or she voluntarily
released the victim in a safe place. Tex. Penal Code Ann. § 20.04(d) (Vernon 2003). 

 The only evidence relevant to this issue is that, after the assaults, Smith walked with
N.H. back to her friend's back yard, threw away the knife on the way, and left her there. 
Although the State argues, in a very brief discussion, that safe release was "debatable,"
the State directs us to no other evidence suggesting that the back yard of the house was
not a "safe place," as contemplated by the statute. The State suggests no other reason
for counsel to fail to request the statutory mitigation charge at punishment. Had he done
so, it appears clear the offense would have been lowered from a first-degree to a second-degree felony, with application of a lower range of punishment. Thus, it would seem that
harm could readily be shown. 

 In this case, however, it is not. Smith was charged with, and found guilty of,
aggravated kidnapping by abducting his victim with intent to abuse her sexually. See Tex.
Penal Code Ann. § 20.04(a)(4) (Vernon 2003). At the punishment phase, the jury found
an enhancement paragraph, based on Smith's 1994 felony conviction in Mississippi for
sexual battery, to be true. The "pen packet" introduced into evidence reflects that Smith
was convicted in Mississippi of raping a child under the age of fourteen years. That crime
corresponds to aggravated sexual assault under Section 22.021(a)(2)(B) of the Texas
Penal Code. Tex. Penal Code Ann. § 22.021(a)(2)(B) (Vernon Supp. 2006). There is a
special enhancement statute for repeat offenders who are convicted of aggravated
kidnapping by abducting his or her victim with intent to abuse such victim sexually, and who
have been previously convicted under a laundry list of other statutes, one of which is
Section 22.021, or under the laws of another state containing elements substantially similar
to the elements of one of those listed offenses. Tex. Penal Code Ann. § 12.42(c)(2)(A)(ii),
(B)(ii), (B)(v) (Vernon Supp. 2006). The Mississippi conviction, if properly before the jury,
provided the necessary previous felony conviction for a mandatory life sentence under the
statute.

 Thus, even though under normal circumstances counsel should have requested the
charge which would potentially reduce the level of the crime to that of a second-degree
felony, it could make no difference to the ultimate outcome in this case. 

 Smith next contends counsel was ineffective because he did not object to improper
and prejudicial jury argument in which the State referred to Smith as a "hunter" in its
opening statement, and as a "sexual predator" during final argument on guilt/innocence
and again at final argument in the punishment stage. Smith also complains that his
counsel was ineffective because he did not object when the State described him in final
argument on guilt/innocence as "acting like an animal" and behaving like a "hunter." 

 The Code of Criminal Procedure allows the State's attorney to state in its opening
statement "the nature of the accusation and the facts which are expected to be proved by
the State in support thereof." Tex. Code Crim. Proc. Ann. art. 36.01(a)(3) (Vernon Supp.
2006). In the complained-of statement, the State, in describing Smith's appearance on the
night of the abduction, said: 

 He's going to be dressed a little unusually for someone who is visiting. He's
going to have on a baseball cap that's equipped with a camouflage netting
that comes down over the face. It's commonly used by hunters. And before
this trial is over, I think you'll come to understand that this Defendant, and the
evidence will show it, that he, too, was a hunter of a very particular kind. 


 Appellate review of trial counsel's representation is highly deferential and presumes
that counsel's actions fell within the wide range of reasonable and professional assistance. 
See Bone v. State, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). As far as strategic or
tactical reasons for counsel's action or inaction, in the absence of direct evidence of
counsel's reasons for the challenged conduct, an appellate court will assume a strategic
motivation if any can be imagined. Garcia v. State, 57 S.W.3d 436, 441 (Tex. Crim. App.
2001). We will not conclude the challenged conduct constitutes deficient performance
unless the conduct was so outrageous that no competent attorney would have engaged
in it. Id.; see Thompson v. State, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). As is usually
the case on direct appeal, the trial record does not reveal whether there could have been
sound reasons or trial strategy to justify counsel's performance. See Thompson, 9 S.W.3d
at 813-14. 

 The background for the statement is clearly a description of the facts that the State
expected to prove. The conclusion of his statement, however, edges into the area of
describing the character of the assailant rather than focusing entirely on the "facts
expected to be proved." Cf. Russell v. State, 904 S.W.2d 191, 197 (Tex. App.--Amarillo
1995, pet. ref'd) (even if State's statement was error, nothing in record indicating jury
unable to follow instruction to disregard).

 It is arguable the State's concluding statement was objectionable, but we do not find
that counsel acted below any reasonable level of professionalism by failing to object. 
There are many possible reasons why counsel may have decided not to object, including
something as simple as wanting to prevent the State from rephrasing the statement or
repeating it again in the presence of the jury. In the absence of anything in the record to
show the tactics or strategic reasoning of counsel, we cannot conclude counsel was
constitutionally ineffective in this instance.

 The remaining complaints concern the State's closing arguments where Smith was
described as a "sexual predator," "acting like an animal," and behaving like a "hunter." The
Texas Court of Criminal Appeals has said there are four proper areas of jury argument: 
(1) summation of the evidence presented at trial; (2) reasonable deduction drawn from that
evidence; (3) answer to the opposing counsel's argument; or (4) a plea for law
enforcement. Jackson v. State, 17 S.W.3d 664, 673 (Tex. Crim. App. 2000). (2) The
descriptions of the assailant were accurate shorthand representations of a person who
would enter a house in camouflage, abduct a fifteen-year-old child at knife point, and
repeatedly abuse and rape her for six hours--all of which was graphically shown by the
evidence. We find no shortcoming by counsel for failing to object to the arguments, and
as above, in the absence of anything in the record to show the tactics or strategic
reasoning of counsel, we cannot conclude counsel was constitutionally ineffective in this
instance.

 Smith also contends that counsel was ineffective because he did not object to the
admission of testimony about an extraneous offense--his forced entry into a house near
the one from which he abducted the victim--on the same night as the abduction. The
general rule is that, at the guilt/innocence phase of a prosecution, extraneous offenses are
not admissible to show action and conformity with bad character. The evidence must have
relevance apart from character conformity, i.e., it must make more or less probable an
elemental fact or a fact that inferentially leads to an elemental fact or tends to disprove in
the same way. Examples are to prove motive, opportunity, intent, preparation, blame,
knowledge, identity, or absence of mistake or accident. Montgomery v. State, 810 S.W.2d
372, 387 (Tex. Crim. App. 1990) (op. on reh'g). Further, the admission of extraneous
offense evidence is reviewed under an abuse of discretion standard. Rankin v. State, 974
S.W.2d 707, 718 (Tex. Crim. App. 1996) (op. on reh'g). 

 The evidence--identifying Smith as entering a woman's home wearing a hat with
camouflage netting--on the same night that he went next door and broke into another
woman's home--could arguably be admissible to show intent and to show preparation for
the crime ultimately committed. Again, under the tactical/strategic analysis set out above,
it is not apparent that counsel acted in a deficient manner by failing to object. 

 Smith also complains that his counsel should have objected to closing argument by
the State that referred to the expectations and demands of the community. The context
for that argument was concern for the protection of the community from such attacks. This
is no more than a plea for law enforcement, which is categorically acceptable. See
Jackson, 17 S.W.3d at 673. 

 The record in this case does not establish deficient performance by trial counsel. 
The contention is overruled. 

 Smith finally contends the trial court erred by admitting into evidence at the
punishment stage of trial, over his objection, the Mississippi "pen packet." Smith objected
at trial on the basis that the document was inadmissible because it was not "self proving." 
On appeal, he argues that the single signature on the certification of records form, and the
lack of a seal on that document, results in a failure to adequately comply with the rule
governing the self-authentication of a document, citing Tex. R. Evid. 902. 

 That rule provides several options for self-authentication. Subdivision (4) provides
that a certified copy of a public record need not be otherwise proven as authentic if it is
under a state seal. Smith's counsel contends there is no seal on the document. The
duplicate sent to this Court as part of the record does not show such a seal. However, a
raised--uncolored--seal is on the original exhibit. Thus, the requirements of Rule 902(4)
were adequately met, and error has not been shown.

 We affirm the judgment.


 Donald R. Ross

 Justice


Date Submitted: August 2, 2006

Date Decided: November 10, 2006


Do Not Publish
1. In Hernandez v. State, 988 S.W.2d 770 (Tex. Crim. App. 1999), the court held that
the Strickland review is also applicable at the punishment phase.
2. This Court has suggested a fifth area also proper for jury argument: the trial court's
charge to the jury. See Bessey v. State, 199 S.W.3d 546 (Tex. App.--Texarkana 2006,
pet. filed).



d Golden Villa Nursing Home v. Smith, 674 S.W.2d 343, 349 (Tex.
App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). But Morgan, Cecil, and Smith, deal with expert
testimony at trial, not pretrial expert reports required by Section 74.351(a). Therefore, we find those
cases inapplicable.
            To determine if Parker's claims are healthcare liability claims, we must examine the
underlying nature of the claims. See Sorokolit v. Rhodes, 889 S.W.2d 239, 242 (Tex. 1994); Jones,
141 S.W.3d at 793. We are not bound by Parker's characterization of the claims. Buck v. Blum, 130
S.W.3d 285, 291 (Tex. App.—Houston [14th Dist.] 2004, no pet.). Plaintiffs cannot use artful
pleading to avoid the statutory requirements when the essence of the suit is a healthcare liability
claim. Garland Cmty. Hosp. v. Rose, 156 S.W.3d 541, 543 (Tex. 2004) (negligent credentialling
claim is healthcare liability claim). A cause of action is a healthcare liability claim if, to prove it,
the claimant must establish an applicable standard of care for healthcare providers or if the act or
omission complained of was "an inseparable part of the rendition of medical services." Jones v.
Khorsandi, 148 S.W.3d 201, 206 (Tex. App.—Eastland 2004, pet. filed); Buck, 130 S.W.3d at 291;
Rubio v. Diversicare Gen. Partner, Inc., 82 S.W.3d 778 (Tex. App.—Corpus Christi 2002, pet.
granted); Bush v. Green Oaks Operator, Inc., 39 S.W.3d 669, 672 (Tex. App.—Dallas 2001, no
pet.); Williams v. Walker, 995 S.W.2d 740, 741 (Tex. App.—Eastland 1999, no pet.).
            Parker's petition alleges that Hospital employees improperly restrained Cody, failed to have
sufficient staff, failed to properly train staff, violated Cody's rights as set out in the Patient's Bill of
Rights, failed to abide by the Hospital's "own standards in the care and treatment" of Cody, failed
to exercise "due care and caution" as to Cody, and failed to timely and appropriately treat Cody's
injuries—all claims which are healthcare claims, because proving them would require establishment
of the appropriate standards of care to be used when restraining or otherwise caring for mental
patients. But Parker also alleged Hospital employees abused, neglected, or exploited Cody and then
covered up or misrepresented those wrongs—claims we will refer to as Parker's "abuse" claims. The
abuse claims bear additional scrutiny.
            Even in a medical setting, claims of torts which are not inseparably part of healthcare services
or of "safety or professional or administrative services directly related to health care"


 are not
healthcare liability claims. For example, unwanted sexual advances by a doctor produced claims that
were not healthcare liability claims. See Khorsandi, 148 S.W.3d 201; see also Buck, 130 S.W.3d
285; Rubio, 82 S.W.3d 778; Bush, 39 S.W.3d 669.
            If employees of the Hospital abused Cody in some way unrelated to his course of care or
treatment, such as by assaulting him outside of efforts to care for or to restrain him for safety
purposes, then claims for such acts would not be healthcare liability claims. But we have reviewed
the petition and find, even with a liberal reading of the pleading, no allegations of any act committed
by anyone who had turned aside from the Hospital's mission to care for and restrain Cody during his
course of care. All of Parker's claims would require reference to the standards by which mental
health institutions restrain patients. See Jones, 141 S.W.2d at 794. Accordingly, the entirety of
Parker's suit is properly characterized as one claiming healthcare liability.
            Because Parker never filed a medical expert report, the trial court, on the Hospital's motion,
was required to dismiss the action with prejudice. See id.
(2)       The Attorney's Fee Award Was Proper
            The trial court awarded the Hospital $9,000.00 in attorney's fees. Section 74.351(b)(1)
provides that, if an expert report has not been served within the period specified, the trial court, on
a proper motion, shall award attorney's fees and costs of court to the affected party. Tex. Civ. Prac.
& Rem. Code Ann. § 74.351(b)(1). We find nothing in Section 74.351(b)(1) dictating the timing
of a trial court's award of attorney's fees. Parker cites no authority to support the contention that the
trial court deferring a finding on the Hospital's attorney's fees was improper,


 nor did this Court find
any authority to support Parker's argument. The trial court did not abuse its discretion by awarding
attorney's fees in the manner it did.
            We affirm the trial court's judgment.
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          April 14, 2005
Date Decided:             June 28, 2005