COURT OF APPEALS


EIGHTH DISTRICT OF TEXAS


EL PASO, TEXAS





VINCENT MAES and CYNTHIA MAES,
and THE INSURANCE COMPANY OF
THE STATE OF PENNSYLVANIA,


 Appellants,


v.


EL PASO ORTHOPAEDIC SURGERY
GROUP,


 Appellee. 

§


 


§


 


§


 


§


 


§



§

No. 08-06-00071-CV



Appeal from


 County Court at Law No. 3


of El Paso County, Texas


(TC # 2006-1022)




O P I N I O N



 Vincent and Cynthia Maes and The Insurance Company of the State of Pennsylvania appeal
the dismissal of a health care liability suit against the El Paso Orthopaedic Surgery Group (EPOSG).
They also complain of the severance of this suit from the claims remaining in the trial court. For the
following reasons, we affirm.

FACTUAL SUMMARY


 Vincent Maes, a truck driver by trade, was involved in a head-on motor vehicle collision in
Arizona in 2000. He was evaluated at the White Mountain Apache Regional Medical Center and
diagnosed with lumbar spine and left knee strain. On October 9, Vincent visited Dr. Barry King at 
EPOSG. A series of x-rays and a neurological exam were normal. Dr. King prescribed medication
and referred Vincent to physical therapy. In November, an MRI revealed the L5-S1 disc with
posterior protrusion impinging on the left S1 nerve. During the following months, Vincent
complained of progressive leg pain and bladder dysfunction. He then received two epidural steroid
injections, which provided little relief. 

 Vincent continued with physical therapy, but by December he was using a wheelchair. On
July 6, 2001, Dr. Paul Cho, a neurosurgeon with EPOSG, performed a lumbar laminectomy and
bilateral facetectomies with fusion. Following surgery, Vincent complained of left foot drop, left
foot orthosis, lower extremity weakness, and urinary and sexual dysfunction. He was seen in clinic
by Dr. Cho on nine separate occasions, diagnosed with depression and psychosomatism, and
prescribed anxiolytics, antidepressants, and opioids. By December 2001, he had been diagnosed
with T12-L1 incomplete paraplegia and T-10 paraplegia. (1) 

 The Maeses filed suit against Dr. Cho and EPOSG on July 7, 2003. (2) On March 18, 2004,
they filed an expert report from Dr. James P. Bradley, who is board certified in Internal Medicine,
Pulmonary Medicine, and Critical Care Medicine. Dr. Bradley opined that the surgery did not
ameliorate Vincent's complaints from the motor vehicle accident and may have contributed to his
right-side lower extremity and sexual difficulties. According to Dr. Bradley, Dr. Cho breached the
standard of care because he failed to repeat the MRI of the lumbar spine and/or obtain a CT scan to
rule out post-surgical lumbar pathology. Dr. Bradley's report did not mention EPOSG either directly
or indirectly.

 The Maeses filed a second expert report on March 30, 2004, from Dr. Robert Wheeler Rand,
who is board certified in neurosurgery. Dr. Rand opined that Vincent's post-operative condition
resulted from the surgery. The neurosurgical standard of care in lumbar fusion procedures is to avoid
compression from direct injury to the nerve roots when pedicle screws are placed. (3) Since Vincent's
neurologic deficit increased and his symptoms deteriorated, Dr. Cho breached the standard of care
by failing to order an essential neurological work up, including a repeat MRI and CT scan of the
L5/S1. Dr. Rand explained that had further testing been performed in September 2001, an MRI or
CT scan would have led Dr. Cho to recommend another surgery which, within reasonable
probability, would have restored Vincent's function at best, or at worst, would have kept him from
deteriorating to further paraplegia.

 Dr. Cho and EPOSG filed separate motions to dismiss. EPOSG argued the Maeses failed
to serve the Group with an expert report and that the deadline to serve expert reports had long since
passed. In separate orders, the trial court denied Dr. Cho's motion and granted EPOSG's motion. 
The Maeses' claims against EPOSG were dismissed with prejudice on August 17, 2004. In
November 2005, the trial court severed the Maeses' claims against EPOSG, allowing the dismissal
order to become final. 

 Meanwhile, in April 2005, the Insurance Company of The State of Pennsylvania (ICTSP) 
intervened in the Maeses' suit against Dr. Cho, alleging subrogation rights pursuant to a workers'
compensation policy with Vincent's employer. In December 2005, after the suit against EPOSG was
severed, ICTSP amended its petition alleging direct negligence claims against Dr. Cho and vicarious
liability claims against EPOSG. EPOSG filed a motion to strike the amended petition, but the record
does not show whether the trial court ruled on it. Ultimately, the trial court overruled a motion for
new trial and motion for reconsideration of the severance filed by ICTSP. A second motion was
filed, but the only relief sought related to the severance order.

 THE PLEADINGS


 Both the original petition and the first amended petition, which was filed the morning of the
dismissal hearing, alleged direct liability and vicarious liability claims against EPOSG. The latter
specifically alleged: 

 Defendant EL PASO ORTHOPAEDIC SURGERY GROUP is a professional
association and/or corporation and has been joined in this lawsuit.


. . .



 Defendant EL PASO ORTHOPAEDIC SURGERY GROUP, hereinafter referred to
as Defendant GROUP, is a professional association and/or corporation, organized to
provide orthopaedic services to its patients, including physical therapy services. At
all relevant times, the Defendant provided medical services by its agents and
employees to the Plaintiff VINCENT MAES and they were acting within the course
and scope of their employment.


. . .



 On or about October 9, 2000, Plaintiff was receiving treatment on the premises of 

 Defendant GROUP.


 Defendant GROUP by its agents is liable to Plaintiff for the negligence of its
employees under the doctrine of respondeat superior.


. . .



 Defendants GROUP and CHO were negligent in one or more of the following:



 Failing to timely diagnose a spinal cord lesion;


 


 Failing to perform appropriate diagnostic tests, such as a MRI Myelogram or
CT scan after Plaintiff failed to progress in therapy and had continued
complaints of pain;


 


 Misdiagnosed Plaintiff's physical condition as mental one;


 


 Failed to timely operate on the Plaintiff's spinal cord;


 


 Failed to prevent spinal cord compression and ischemia in Plaintiff's thoracic
cord;


 


 Operated on the wrong section of Plaintiff's back;


 


 Failed to timely and properly react to the Plaintiff's neurologic changes;


 


 Defendant Cho practiced orthopedic medicine and surgery on Plaintiff at a
time when Defendant Cho was not able to perform as a reasonable and
prudent physician due to temporary incapacity, impairment, illness or
disability, and Defendant EPOSG, knowing of Defendant Cho's temporary
problem, allowed him to do so;


 


 Failed to inform the patient of pertinent finding and concerns regarding the
cause of his neurologic problems; and


 


 Did not have the patient's informed consent to treat because the patient was
provided incorrect information concerning the nature of his neurologic injury.


 

DISMISSAL:


FRAMING THE ISSUES



 Plaintiffs and Intervenor, collectively Appellants, bring two issues for review. First, they
contend that since the Maeses asserted a vicarious liability claim against the Group for the
negligence of Dr. Cho, a separate expert report was not required. Even if it were required, they
complain the reports were sufficient as to the Group. Secondly, Appellants argue that severance was
improper. We review the trial court's orders for an abuse of discretion. Walker v. Gutierrez, 111
S.W.3d 56, 62 (Tex. 2003); Bowie Memorial Hospital v. Wright, 79 S.W.3d 48, 52 (Tex. 2002).
Under this standard, we must determine whether the trial court acted arbitrarily and without reference
to any guiding rules or principles.

The Maeses Did Not Believe EPOSG Was A Health Care Provider Under The 


Former Medical Liability And Insurance Improvement Act



 In their initial response to the motions to dismiss, the Maeses claimed that the Group was not
a "physician" or "healthcare provider" requiring an expert report. Walter Boyaki, one of the
plaintiffs' attorneys, testified during the dismissal hearing concerning the applicability of the Act to
EPOSG:

 MR. BOYAKI: I did not think -- and I still to this day do not think El Paso
Orthopaedic Surgery Group qualifies under 4590i as a health care provider. . . . My
understanding of [the Group] which is fairly extensive, is that it's not only not a
group of physicians. It is a working entity that owns property. Its CEO, for example,
is not a physician. They have therapists. They have a variety of other -- of other
services which I don't think qualifies them under 4590i.


 A health care provider is defined as "any person, partnership, professional association,
corporation, facility, or institution duly licensed or chartered by the State of Texas to provide health
care as a registered nurse, hospital, dentist, podiatrist, pharmacist, or nursing home, or an officer,
employee, or agent thereof acting in the course and scope of his employment." [Emphasis added.] 
Tex.Rev.Civ.Stat.Ann. art. 4590i, § 1.03(a)(3). (4) As a professional association, EPOSG is a health
care provider and subject to the provisions of the Act. 

Appellants Contend That Since The Expert Reports Were Sufficient


As To Dr. Cho, They Were Sufficient As to EPOSG



 An "expert report" is defined as a written report by an expert that provides a fair summary
of the expert's opinions as of the date of the report regarding applicable standards of care, the
manner in which the care rendered by the physician or health care provider failed to meet the
standards, and the causal relationship between that failure and the injury, harm, or damages claimed. 
Tex.Rev.Civ.Stat.Ann. art. 4590i, § 13.01(r)(6). (5) EPOSG maintains an expert report was required
to specifically opine on the Group's breach of the standard of care. Appellants counter that the
expert reports they provided are sufficient to meet the requirements of Article 4590i, and that the
court impliedly so held in denying Dr. Cho's motion to dismiss.

 As we have noted, Dr. Bradley's report did not mention EPOSG, nor did it directly or
indirectly articulate the Group's breach of the standard of care. Dr. Rand's report purportedly
referenced the Group as follows:

 Also, since conservative treatment failed post-operatively, the neurologic deficit
increased and Mr. Maes' symptoms continued to deteriorate, the standard of care
was breached by each of the physicians who failed to order a neurological work up
which was essential to include a repeat MRI and CT scan of the L5/S1.


The records which Dr. Rand reviewed included those of Dr. Hajj, Dr. Romagosa, Dr. Katz [none of
whom is affiliated with EPOSG], Gary Feldman, Ph.D., El Paso Specialty Hospital, Highland Rehab
Hospital, and Del Sol Rehabilitation. When asked whether Dr. Rand's report was sufficient to
address the conduct of the Group, Boyaki testified:

 Yes. Because Dr. Rand put that the physicians -- the standard of care was breached
by each physician who failed to order a neurological workup and an MRI and a CT
scan, which included [Dr.] Mrochek, which included [Dr.] Smith, which included all
their therapy people, the therapy people who kept saying that Mr. Maes keeps falling
down. 


. . .



 Part one is the surgery is bad. Part two is the followup is bad. That's why
Dr. Bradley and Dr. Rand are both critical of all of the El Paso Orthopaedic Surgery
doctors who didn't do what they should have done. 


If Dr. Rand's report had specified Dr. Mrochek and Dr. Smith, both of whom are affiliated with the
Group, we might agree. But on this record, we cannot do so.

Appellants Contend That An Expert Report Was Unnecessary


To Support Claims of Vicarious Liability



 Under the doctrine of respondent superior, an employer may be vicariously liable for the
negligence of its agent or employee who was acting within the scope of employment even though
the employer did not personally commit a wrong. Baptist Memorial Hosp. Sys. v. Sampson, 969
S.W.2d 945, 947 (Tex. 1998). A plaintiff must show the employee was acting (1) within the general
authority granted by the employer, (2) in furtherance of the employer's business, and (3) for the
accomplishment of an object for which he was employed. Buck v. Blum, 130 S.W.3d 285, 288
(Tex.App.--Houston [14th Dist.] 2004, no pet.).

 Appellants first contend that an expert report under former Article 4590i is not required for
a claim of vicarious liability. Article 4590i, § 13.01(d) provides:

 Not later than the later of the 180th day after the date on which a health care liability
claim is filed or the last day of any extended period established under Subsection (f)
or (h) of this section, the claimant shall, for each physician or health care provider
against whom a claim is asserted: 


 (1) furnish to counsel for each physician or health care provider one or more expert
reports, with a curriculum vitae of each expert listed in the report; or 


 (2) voluntarily nonsuit the action against the physician or health care provider.

 

Tex.Rev.Civ.Stat.Ann. art. 4590i, § 13.01(d)(Vernon Supp. 2002). There is no dispute that the
claims against Dr. Cho and EPOSG are health care liability claims. (6) In the alternative, Appellants
maintain that the expert reports as to Dr. Cho's conduct are sufficient as to EPOSG because the
claims against the Group are now limited to vicarious liability. See University of Texas
Southwestern Medical Center v. Dale, 188 S.W.3d 877, 878-79 (Tex.App.--Dallas 2006, no
pet.)(plaintiff who alleged medical center was liable for the negligence of its residents complied with
Section 74.351 requirements when it served expert reports setting forth how each resident breached
the applicable standard of care); Casados v. Harris Methodist H-E-B, No. 2-05-080-CV, 2006 WL
2034230 at *5 (Tex.App.--Fort Worth 2006, no pet.)(not designated for publication)(plaintiff's
fulfilled Article 4590i, § 13.01(d) requirement since they disclaimed any direct liability claims
against the hospital and filed expert reports regarding the defendant doctors whose alleged
negligence formed the basis of plaintiff's vicarious liability claim); In re CHCA Conroe, L.P., No.
09-04-453-CV, 2004 WL 2671863 at *1 (Tex.App.--Beaumont 2004, orig. proceeding)(not
designated for publication) (plaintiff's expert report on the standard of care for doctors satisfied
requirements of Article 4590i in vicarious liability claim against health care center). We will address
each of these cases in turn.

 In Dale, the plaintiffs did not allege that UT Southwestern was directly negligent. Dale, 188
S.W.3d at 878. Instead, it alleged that the medical center was vicariously liable for the negligence
of four residents. The plaintiffs served an expert report which specifically named each resident and
described how each resident breached the applicable standard of care. The basis for the motion to
dismiss was that the report did not identify UT Southwestern by name. The appellate court
determined that because the claims were based solely on the actions of the resident physicians and
no direct liability claims were asserted against the institution, the report was not required to mention
it by name. Id. at 879.

 In Casados, the plaintiffs sued the hospital and several doctors for negligence and later
amended their petition to assert vicarious liability against the hospital for the negligence of the
doctors. Casados, 2006 WL 2034230 at *1. The trial court dismissed the direct negligence claims
when the plaintiffs failed to timely file an expert report. It later granted summary judgment on the
vicarious liability claims (7) and severed it from the remaining claims against the doctors. Pertinent
to our discussion, the litigants in Casados agreed that an expert report was unnecessary when the
only theory of liability asserted against a hospital is vicarious liability for the actions of a defendant
physician for whom the plaintiff has filed an expert report. Id. at *4. In overruling the hospital's
cross point seeking attorney's fees and costs, the court of appeals noted that by the time the expert
reports were due, the plaintiffs had amended their petition to allege only vicarious liability claims
and before the trial court dismissed the vicarious liability claims, the plaintiffs had disclaimed any
direct liability causes of action. Id. at *5. 

 Finally, in Conroe, the plaintiffs sued the hospital and two doctors who provided medical
services during the delivery and birth of their child. In re Conroe, 2004 WL 2671863 at *1. They
served an expert report on the standard of care for the doctors, but the report did not address the
standard of care of the hospital. In an original proceeding, the hospital argued that the trial court was
required to dismiss the claims against it because no expert report had been filed. Id. The plaintiffs
countered that because their claims against the hospital were limited to vicarious liability, the expert
report on the doctors' standard of care was sufficient. In denying mandamus relief, the court of
appeals noted that although the petition could be read more broadly, the plaintiffs had disclaimed
any claims for direct negligence and expressly abandoned all other theories of liability. Id. And
there's the rub. Appellants concede they have now abandoned all direct liability issues and EPOSG
responds that they never told that to the trial court -- which brings us to the hearing before Judge
Alvarez.

The Hearing


 The hearing below encompassed Dr. Cho's motion to dismiss and the Group's motion to
dismiss. The bulk of the hearing was addressed to the untimeliness of the expert reports, (8) whether
the Maeses could establish that their failure to file timely was the result of accident or mistake, and
whether the reports were adequate as to Dr. Cho. As to liability claims against EPOSG, the record
reveals the following:

 Mr. Valdez: Now, Your Honor, there is one thing that I think is absolutely clear as
of today, as all of us sit here, and that is absolutely no effort has been made to file any
kind of report as to the El Paso Orthopaedic Group. So as we sit here today at a bare
minimum we're entitled to a dismissal of the group.


 The Court: That I agree. There's no question. All right? Okay. There is absolutely
nothing with respect to El Paso Orthopaedic Group. 

In an effort to establish that the failure to timely file the expert reports was not intentional or the
result of conscious indifference, Boyaki testified that Dr. Cho and/or El Paso Orthopaedic Surgery
Group, through other of its physicians and employees, fraudulently concealed information from
Mr. Maes about the cause of his injury. Boyaki also testified that he had recently learned that Dr.
Cho was "impaired" and that "the impairment would explain some of the rather bizarre conclusions
that he came to." Questioned by co-counsel, Boyaki then turned to the vicarious liability claims:

 Q: Under the original petition the liability as to El Paso Orthopaedic Surgery Group
was -- was primarily derivative liability under respondeat superior?


 A: Correct. It was respondeat superior. I believe the insurance policy of El Paso
Orthopaedic Surgery Group, Dr. Cho was not named individually; he's part of the
group.


Boyaki also advised the court that he represented another individual in a medical malpractice case
against Dr. Cho and EPOSG which was pending in County Court at Law No. 5. 

 THE COURT: All right. I have another question. You -- you kept referring to Judge Villa
and a hearing that you had with Judge Villa prior to this hearing.


 MR. BOYAKI: Right:


 THE COURT: What's the -- I mean what --


 MR. BOYAKI: It's against Cho. And Judge Villa held his report is adequate.


 MR. MUNDIE: It's in the other case that we were confusing deadlines with.


 MR. BOYAKI: Yes.


 MR. VALDEZ: It was a different report. By the way, he did dismiss the case against the El
Paso Orthopaedic Group.


 MR. MUNDIE: Thank you for throwing that in.


 MR. BOYAKI: As to -- as to medical decisions, not as to respondeat superior, not
as to -- of the -- the allegations of impaired physician. 


While apparently, the claims were addressed separately in Judge Villa's court, they were not
addressed separately before Judge Alvarez below. By his own testimony, Boyaki identified both
direct and vicarious liability claims against EPOSG. 

 We come now to the hearing on ICTSP's motion for new trial. Almost immediately, the
discussion broached the parallel cases involving Dr. Cho and EPOSG:

 MR. BOYAKI: Now, if you'll recall, Judge -- and then I'll shut up because this
really concerns this way (indicating) -- when we did the motion to dismiss on the
4590i, we had, if you recall, two cases: this one and Judge Villa's court.


 THE COURT: Yes.


 MR. SMITH (9) [sic]: We were parroting both. And in Judge Villa's court, Judge Villa
left the vicarious liability into the case and severed out the 4590i, because we had no
expert report criticizing the Group practicing medicine. But the vicarious liability
was left in. Okay?


 So just to refresh the Court's memory, I had thought we were doing the same
thing in this court, but if I'm wrong that's okay, but that's what I thought. So when
the order came dismissing the Group, I thought it was for the malpractice issue but
not the vicarious liability, because it was specifically pled for vicarious liability. But
if the Court dismissed it all, then I stand corrected. But that's the input that I have.


 THE COURT: Mr. Valdez?


 MR. VALDEZ: Thank you, Your Honor. Your Honor, my first point is: I don't
believe Mr. Boyaki -- and he can correct me if I'm wrong -- I don't think Mr. Boyaki
has a dog in this hunt. I think that the dispute right now is between the intervenor
and myself.


 I want to first address the issue of standing, because that is important. And
I do believe that there is a disagreement between me and Mr. Smith concerning the
status of this. Mr. Boyaki has not filed a motion for new trial or has not challenged
the Court's order as to the dismissal of the El Paso Orthopaedic Group. That's
Mr. Smith who has done that. So it is Mr. Smith who is presenting this argument
today and not Mr. Boyaki, and it is Mr. Boyaki who represents the family.

 

 Now, the cases that Mr. Smith cites are correct in that he has got a
subrogation interest in this case, but that's all he has. He has got a derivative claim. 
And while he may work in concert with Mr. Boyaki or if Mr. Boyaki, for one reason
or another, abandoned the client and did not pursue the client's claim, he could assert
that derivative interest to the extent of his subrogation interest only.


. . .



 And the Court-- and I remember that the Court was concerned and wanted to
hear about what are some of these other cases that are pending. We told the Court
at that point, 'Well, this [is] what Judge Villa has done.' Both Walter and I made the
specific note of telling you about that. The Court dismissed outright the claim
against the El Paso Orthopaedic Group for the failure of the expert witnesses to even
mention the Group whatsoever.

 

 Mr. Boyaki is not contesting that, as we stand here today. That is only Mr.
Smith. And as I mention the standing issue, Mr. Smith has got a dog in the hunt,
only to the extent of his derivative claim against Mr. Boyaki. 


Neither Mr. Boyaki nor Mr. Smith replied to this argument. On this record, we are hard pressed to
conclude that Judge Alvarez abused his discretion in dismissing all claims against the Group. We
overrule Issue One.

SEVERANCE


 In Issue Two, Appellants contend the trial court erred in severing EPOSG's claims. A trial
court does not abuse its discretion in severing a claim when: (1) the controversy involves more than
one cause of action; (2) the severed claim is one that could be asserted independently in a separate
lawsuit; and (3) the severed actions are not so interwoven with the other claims that they involve the
same facts and issues. Liberty Nat. Fire Ins. Co. v. Akin, 927 S.W.2d 627, 629 (Tex. 1996).

 EPOSG moved to sever so that any and all causes of action against EPOSG could be finally
concluded while the claims against Dr. Cho proceed. As there are no remaining claims against the
Group, there is no error. We overrule Issue Two and affirm the judgment of the court below.


August 30, 2007 

 ANN CRAWFORD McCLURE, Justice


Before Chew, C.J., McClure, and Barajas, C.J. (Ret.)

Barajas, C.J. (Ret.), sitting by assignment
1. This diagnosis was made by a physician who is unaffiliated with EPOSG.
2. The Maeses suit is governed by former Article 4590i. See Act of May 30, 1977, 65th Leg., R.S., ch. 817,
1977 Tex.Gen.Laws 2039 (former Texas Revised Civil Statute art. 4590i), repealed by Act of June 2, 2003, 78th Leg.,
R.S., ch. 204, §§ 10.09, 23.02 (a) & (d), 2003 Tex.Gen.Laws 847, 884, 898-99 (Chapter 74 of the Texas Civil Practice
and Remedies Code did not take effect until September 1, 2003 and actions filed before its effective date were governed
by the prior law that was in effect).
3. Plaintiff's trial counsel bluntly explained it this way: "Don't put the screw in the nerve. It's real simple."
4. See Act of May 30, 1977, 65th Leg., R.S., ch 817, § 1.03(a), 1977 Tex.Gen.Laws 2039, 2041, repealed and
codified as amended by Act of June 2, 2003, 78th Leg., R.S., ch. 204, §§ 10.01, 10.09, 2003 Tex.Gen.Laws 847, 864,
884 (hereinafter art. 4590i, § 1.03(a)).
5. See Act of May 5, 1995, 74th Leg., R.S., ch. 140 § 1, 1995 Tex.Gen.Laws 985, sec. 13.01, repealed and
codified as amended by Act of June 2, 2003, 78th Leg., R.S., ch. 204, §§ 10.01, 10.09, 2003 Tex.Gen.Laws 847, 864,
884 (hereinafter art. 4590i, § 13.01).
6. "Health care liability claim" is defined as a cause of action against a health care provider or physician for
treatment, lack of treatment, or other claimed departure from accepted standards of medical care or health care or safety
which proximately results in injury to or death of the patient, whether the patient's claim or cause of action sounds in
tort or contract. Tex.Rev.Civ.Stat.Ann. art. 4590i, § 1.03(a)(4)(Vernon Supp. 2002).
7. The trial court determined there were no genuine issues of material fact on the essential element of ostensible
agency.
8. Dr. Bradley's report was filed 254 days after suit was filed. Dr. Rand's was filed 266 days after suit was filed.
9. Loren Smith represents the Intervenor, ICTSP. He did not participate in the dismissal hearing.