

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-13-00052-CV

CHRISTUS HEALTH ARK-LA-TEX D/B/A
CHRISTUS ST. MICHAEL HEALTH SYSTEM, Appellant

V.

WILLIAM C. CURTIS AND TINA CURTIS, Appellees

On Appeal from the 5th District Court
Bowie County, Texas
Trial Court No. 12C1341-005

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss

O P I N I O N

William C. Curtis and wife, Tina Curtis, and their three expert reports allege that William was improperly treated by Dr. James Urbina[1] at Christus Saint Michael Hospital—owned and operated by Christus Health Ark-La-Tex d/b/a Christus St. Michael Health System—for symptoms of "sudden muffled hearing, balance issues, nausea and feeling poorly." The Hospital claims that the trial court should have dismissed the Curtises' lawsuit because the expert reports were conclusory on the element of causation. Because we find no abuse of discretion in the trial court's denial of the Hospital's motion to dismiss, we affirm[2] the trial court's ruling.

According to the Curtises' petition and their experts' reports, Urbina's treatment of William included administering what are called the Dix-Hallpik and Epley maneuvers (explained below). Allegedly, as a result, William suffered a brainstem stroke and a dissection or separation of the complex basilar artery at the anterior inferior cerebellar artery junction,[3] and this suit followed.

As a case involving alleged health care liability, this matter is governed by Chapter 74 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 74.001–.507 (West 2011 & Supp. 2012). The plaintiff in such a suit must "serve on each

---

[1] While the Curtises also sued Urbina, Urbina is not a party to this appeal.

[2] This is a proper subject for an interlocutory appeal. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9) (West Supp. 2012) (appeal of interlocutory order from district court that "denies all or part of the relief sought by a motion" seeking to dismiss plaintiff's claim for failure to meet expert report requirements); *see also Lewis v. Funderburk*, 253 S.W.3d 204, 208 (Tex. 2008).

[3] This injury may be generally understood as a breach or separation of the artery at or near the cerebellum. *See Medical Dictionary*, MERRIAM-WEBSTER.COM, http://www.merriam-webster.com/medlineplus/anterior%20inferior%20cerebellar%20artery (last visited Aug. 29, 2013).

party or the party's attorney one or more expert reports" within 120 days after filing the original petition. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (West 2011). The report must provide

> a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6) (West 2011).

A trial court must grant a motion to dismiss if it appears the report does not amount to an objective, good-faith effort to comply with the statutory requirements. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 51 (Tex. 2002) (per curiam); *Longino v. Crosswhite*, 183 S.W.3d 913, 916 (Tex. App.—Texarkana 2006, no pet.). An action should be dismissed if the expert report is not sufficiently specific "to provide a basis for the trial court to conclude that the claims have merit." *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6). To be a good-faith effort, the report must discuss the standard of care and breach of that standard with sufficient specificity to inform each defendant of the conduct the plaintiff has called into question and to provide a basis for the trial court to conclude that the claims have merit. *Jernigan v. Langley*, 195 S.W.3d 91, 94 (Tex. 2006) (per curiam). A report that states an expert's bare conclusions about the standard of care, breach, and causation does not meet the statutory requirements. *Wright*, 79 S.W.3d at 52; *Longino*, 183 S.W.3d at 917. Rather, the expert must explain the basis of his or her statements to link the expert's conclusions to the facts. *Wright*, 79 S.W.3d at 52.

A trial court's decision regarding the adequacy of an expert report is reviewed for an abuse of discretion. *Wright*, 79 S.W.3d at 52; *Longino*, 183 S.W.3d at 916. Before reversing the

3

trial court, we must find the court acted arbitrarily or unreasonably without reference to guiding rules or principles. *Wright*, 79 S.W.3d at 52. We may not, however, substitute our opinion for that of the trial court. *Id*. Nevertheless, "a clear failure by the trial court to analyze or apply the law correctly" is an abuse of discretion. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding).

The Hospital's appeal claims the experts' opinions as to causation are conclusory, and therefore insufficient to meet the requirements of Section 74.351(r)(6).[4] The Curtises' suit included allegations of direct negligence in staffing decisions and protocols, as well as allegations of vicarious liability of the Hospital for the treatment administered by Urbina. The Hospital does not argue these allegations were inadequate to allege vicarious liability. *See RGV Healthcare Assocs., Inc. v. Estevis*, 294 S.W.3d 264, 273 (Tex. App.—Corpus Christi 2009, pet. denied) ("When a plaintiff's claim against a hospital is not for direct negligence, but is based on the conduct of an employee through the doctrine of respondeat superior," the report "is sufficient as against the hospital to satisfy the expert report requirement for the vicarious liability claims" if "the report identifies conduct by the hospital's employee, the hospital is implicated, and . . . the report adequately addresses the standard of care applicable to the employee, how the employee breached the standard of care, and that the breach caused the plaintiff's injury.")

> [W]hen a health care liability claim involves a vicarious liability theory, either alone or in combination with other theories, an expert report that meets the statutory standards as to the employee is sufficient to implicate the employer's conduct under the vicarious theory. And if any liability theory has been adequately covered, the entire case may proceed.

---

[4]The Hospital's appeal does not challenge the reports' discussion of the standard of care and breach of that standard.

*Certified EMS, Inc. v. Potts*, 392 S.W.3d 625, 632 (Tex. 2013). The Curtises' petition alleged that Urbina was an agent, representative, or employee of the Hospital acting within the scope of that agency or employment at the time of the treatment of William.[5]

Each of the three expert opinions took note of William's "abnormal cerebrovascular anatomy" and stated that the relevant standard of care for treating a patient with such anatomy requires the treating physician "not [to] perform the Dix-Hallpik and Epley maneuvers under any circumstance."

> Dr. Urbina evaluated Mr. Curtis' condition and made the diagnosis of Benign Proximal Positional Vertigo. On 9/18/2010, Dr. Urbina performed the Dix-Hallpik maneuver on Mr. Curtis to reposition the crystals in his ears. The Dix-Hallpik maneuver which consists of repeated rapid significant torsion, bending, flexing, extending and rotating Mr. Curtis's neck many times at varying angles and varying degrees was performed. At this point, Mr. Curtis demonstrated double vision, blood pressure drop, abnormal vital signs, vomiting, and additional hearing issues. Dr. Urbina proceeded to have Mr. Curtis do the Epley maneuver after the Dix-Hallpik was performed. Like the Dix-Hallpik, the Epley maneuver involved the physical manipulation of Mr. Curtis' neck. Mr. Curtis did not respond favorably to these procedures.

Dr. Khalid Malik, who supplied one of the Curtises' expert reports, opines that, at that point, William suffered a brainstem stroke. The expert reports, later referring again to William's "abnormal cerebrovascular anatomy," all stated that, because of that abnormal anatomy, "the treatment consisting of the Dix-Hallpik and the Epley maneuvers were contraindicated, dangerous, and very risky."

---

[5]In its brief, the Hospital argues that nothing in the experts' reports gave any basis for vicarious liability for the acts of Urbina. However, each report identified Urbina as a hospitalist at the Hospital and the attending physician when William was admitted. The question of vicarious liability is a legal matter to be decided later, not on the basis of the medical expert reports.

The expert reports also state that, during the Dix-Hallpik procedure, William "suffered classical stroke symptoms of double vision, blood pressure drop, acute hearing loss, vomiting, dizziness, and vital sign compromise." Each report opines that, "[b]ased on reasonable medical probability," at this point, William's brainstem was infarcted and he suffered a dissection of his complex basilar artery. Nonetheless, at this juncture, Urbina performed another contraindicated procedure, the Epley maneuver. The reports each then state unequivocally that "the rapid and repeated significant torsion, bending, flexing, extending and rotating" of William's neck, taking into consideration his abnormal cerebrovascular anatomy, caused the brainstem infarction and a "tear that resulted in a complex dissection of his basilar artery at the [anterior inferior cerebellar artery] junction." Each report then concludes, based on its author's expert medical opinion, that the previously described negligent acts and omissions of both Urbina and the Hospital proximately caused William's brainstem stroke and dissection of the complex basilar artery. Because the Curtises alleged a theory of vicarious liability, the causal allegations that Urbina's treatments caused injury to William are sufficient, alone, to satisfy Section 74.351 of the Texas Civil Practice and Remedies Code as to the Hospital. *See id.* And, since it was sufficient to surmount the expert-report hurdle as to the Hospital's potential vicarious liability, it was sufficient to avoid the dismissal of the Hospital from this action. *See TTHR Ltd. P'ship v. Moreno*, 401 S.W.3d 41, 42 (Tex. 2013); *Potts*, 392 S.W.3d at 632.

The expert reports' assertions of causation on the vicarious liability[6] action against the Hospital were not conclusory and were good-faith efforts to comply with the statutory requirements. The trial court did not abuse its discretion in finding the reports sufficient to satisfy Section 74.351.

We affirm the trial court's ruling.[7]

Josh R. Morriss, III
Chief Justice

Date Submitted:     July 31, 2013
Date Decided:       August 30, 2013

---

[6]Additionally, in allegations addressing direct liability, the reports opined that the Hospital should not have allowed Urbina on its staff; should have had policies or procedures in place to prevent Urbina from performing the two procedures, which were contraindacted because of William's abnormal cerebrovascular anatomy; and should have had a neurologist available to assess and treat William. The reports cite these omissions as well as the above-detailed acts of Urbina as proximate causes of William's injuries. We need not address whether the challenged causation link of the reports is sufficient as to these direct-liability allegations against the Hospital, since the vicarious liability cause of action is medically supported by the expert reports.

[7]The Hospital also argues that, because the Curtises did not specifically argue vicarious liability to the trial court, the argument cannot be relied upon on appeal. We do not find that argument compelling. As mentioned, the plaintiffs' petition alleged agency and respondeat superior, which is de facto the same as vicarious liability. Even if the trial court's ruling does not specifically state that vicarious liability was a basis for finding the reports sufficient, we will affirm that ruling if it can be upheld on any legal theory that finds support in the record. *See In re W.E.R.*, 669 S.W.2d 716, 717 (Tex. 1984) (per curiam). In answer to the Hospital's claim that the Curtises waived the theory of vicarious liability, we find that such theory was adequately argued in the petition with its allegations of agency and respondeat superior.