ACCEPTED
04-15-00049-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
9/4/2015 4:39:01 PM
KEITH HOTTLE
CLERK

No. 04-15-00049-CV

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
09/4/2015 4:39:01 PM
KEITH E. HOTTLE
Clerk

IN THE COURT OF APPEALS

FOR THE

FOURTH COURT OF APPEALS DISTRICT OF TEXAS

MORNINGSIDE MINISTRIES, D/B/A
MORNINGSIDE MINISTRIES AT THE MANOR, AND
THE MORNINGSIDE MINISTRIES FOUNDATION, INC.,
APPELLANTS,

— VERSUS—

ROSA LEE RODRIGUEZ, AS NEXT FRIEND OF FLORA MENDEZ,
APPELLEE.

**BRIEF OF APPELLEE**

BETH WATKINS
STATE BAR NO. 24037675
LAW OFFICE OF BETH WATKINS
926 CHULIE DRIVE
SAN ANTONIO, TEXAS 78216
(210) 225-6666– PHONE
(210) 225-2300– FAX
BETH.WATKINS@WATKINSAPPEALS.COM

ORAL ARGUMENT CONDITIONALLY REQUESTED

## IDENTITIES OF PARTIES AND COUNSEL

### APPELLANTS

Morningside Ministries, d/b/a Morningside Ministries at the Manor and the Morningside Ministries Foundation, Inc.

APPELLANTS' COUNSEL AT TRIAL AND ON APPEAL

Harold. J. Lotz, Jr.
Alexis A. Scott
LOTZ & ASSOCIATES, P.C.
1210 Nacogdoches Road
San Antonio, Texas 78209
(210) 212-4100–phone
(210) 212-5700–fax

APPELLANTS' COUNSEL ON APPEAL

Nissa M. Dunn
HOUSTON DUNN, PLLC
4040 Broadway, Suite 440
San Antonio, Texas 78209
(210) 775-0880–phone
(210) 826-0075–fax
nissa@hdappeals.com

**APPELLEE**

Rosa Lee Rodriguez, as Next Friend of Flora Mendez

APPELLEE'S COUNSEL AT TRIAL

J. Thomas Rhodes
Laura Pazin Porter
Erin Oglesby
TOM RHODES LAW FIRM
126 Villita Street
San Antonio, Texas 78205
(210) 225-5251–phone
(210) 225-6545–fax

Thomas J. Henry
Curtis W. Fitzgerald, II
THE LAW OFFICE OF THOMAS J. HENRY
521 Starr Street
Corpus Christi, Texas 78410
(361) 985-0600–phone
(361) 985-0601–fax

APPELLEE'S COUNSEL ON APPEAL

Beth Watkins
State Bar No. 24037675
LAW OFFICE OF BETH WATKINS
926 Chulie Drive
San Antonio, Texas 78212
(210) 225-6666–phone
(210) 225-2300–fax
Beth.Watkins@WatkinsAppeals.com

# TABLE OF CONTENTS

IDENTITIES OF PARTIES AND COUNSEL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ix

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . x

ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xi

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.      The Expert Report Hurdle Is A Low One . . . . . . . . . . . . . . . . . . . . . . 4

        A.      The Standard Of Review Supports Affirmance . . . . . . . . . . . . . . . 4

        B.      Expert Reports Simply Must Be A Good Faith Effort To Describe
                The Applicable Standard Of Care, How That Standard Was
                Breached, And The Causal Relationship Between That Breach
                And The Claimant's Injuries . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II.     Mendez has Easily Cleared That Hurdle Here . . . . . . . . . . . . . . . . . . . . 5

        A.      Since Mendez's Expert Reports Are Sufficient To Support Her
                Direct Liability Claims Against Berry, As A Matter Of Law They
                Are Also Sufficient To Support Her Vicarious Liability Claims
                Against MSM Arising From Berry's Actions . . . . . . . . . . . . . . . . 5

B.     Mendez Is Not Required To Serve A Report From A Medical Expert Specifically Explaining How MSM Is Vicariously Liable For Its Employee's Intentional Torts . . . . . . . . . . . . . . . . . . . . . . . 8

      1.     When a plaintiff asserts direct and vicarious liability claims, so long as the plaintiff serves adequate reports as to at least one liability theory, the whole case should proceed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

           a.     Mendez's direct liability reports against Berry support her vicarious liability claims against MSM and satisfy the requirement of serving reports on at least one liability theory against MSM . . . . . . . . . . . . 9

           b.     MSM provides no valid authority otherwise . . . . . . . 10

           c.     At the expert report stage, MSM cannot establish that it is not liable for Berry's assault of a MSM patient as a matter of law . . . . . . . . . . . . . . . . . . . . . 12

      2.     The statute does not require an expert opinion regarding vicarious liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

      3.     Furthermore, no medical expert would be statutorily qualified to provide the legal opinion MSM seeks . . . . . . . 13

      4.     The trial court did not abuse its discretion in denying MSM's motion to dismiss . . . . . . . . . . . . . . . . . . . . . . . . . 14

C.     Alternatively, Mendez's Reports Constitute A Good Faith Effort With Regard To Her Direct Liability Claim . . . . . . . . . . . . . . . . . 15

      1.     Mendez's expert reports adequately describe the standard of care applicable to MSM . . . . . . . . . . . . . . . . . . . . . . . . . 16

      2.     Mendez's expert reports sufficiently describe how MSM breached that standard of care . . . . . . . . . . . . . . . . . . . . . . 18

3. Dr. Mansfield's expert report sufficiently describes how MSM's breach of standard of care caused Mendez's injuries . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CONCLUSION AND PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

# INDEX OF AUTHORITIES

## CASES

*Am. Transitional Care Ctrs. of Texas, Inc. v. Palacios*, 46 S.W.3d 873 (Tex.
2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 15, 18, 19, 21

*Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48 (Tex. 2002) . . . . . . . . 4, 18, 19, 21

*Buck v. Blum*, 130 S.W.3d 285 (Tex. App.—Houston [14th Dist.] 2004, no pet.)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Certified EMS, Inc. v. Potts*, 392 S.W.3d 625 (Tex. 2013) . . . . . . . . . . . . *passim*

*Certified EMS, Inc. v. Potts*, 355 S.W.3d 683 (Tex. App.—Houston [1st Dist.]
2011, pet. granted), *aff'd* 392 S.W.3d 615 (Tex. 2013) . . . . . . . . . . . . . 5, 6

*Children's Med. Ctr. of Dallas v. Durham*, 402 S.W.3d 391 (Tex.
App.—Dallas 2013, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Christus Health Ark-La-Tex v. Curtis*, 412 S.W.3d 44 (Tex. App.—Texarkana
2013, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 12

*Christus Spohn Health Sys. v. Johnson*, No. 13-12-00778-CV, 2013 WL
2298471 (Tex. App.—Corpus Christi 2013, no pet.) (mem. opinion) . . 11

*City of Rockwall v. Hughes*, 246 S.W.3d 621 (Tex. 2008) . . . . . . . . . . . . . . . 14

*Dallas Area Rapid Transit v. Amalgamated Transit Union Local No. 1338*, 273
S.W.3d 659 (Tex. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472 (Tex. 1995) . . . . . 11

*E.I. DuPont de Nemours & Co. v. Robinson*, 923 S.W.2d 549 (Tex. 1995) . . . . 7

*Ennis Reg'l Med. Ctr. v. Crenshaw*, No. 05-12-001428-CV, 2013 WL 2446374
(Tex. App.—Dallas 2013, no pet.) (mem. opinion) . . . . . . . . . . . . . . . . 11

*Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788 (Tex. 2006) . . . . . . . . . . . . . . . . . 11

*Fitzgerald v. Advanced Spine Fixation Sys. Inc.*, 996 S.W.2d 864 (Tex. 1999)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Goode v. Shoukfeh*, 943 S.W.2d 441 (Tex. 1997) . . . . . . . . . . . . . . . . . . . . . . . 4

*G.T.E. Sw., Inc. v. Bruce*, 998 S.W.2d 605 (Tex. 1999) . . . . . . . . . . . . . . . . . 12

*IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794
(Tex. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Laredo Med. Group v. Gonzalez*, 155 S.W.3d 417 (Tex. App.—San Antonio
2004, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Loaisiga v. Cerda*, 379 S.W.3d 248 (Tex. 2012) . . . . . . . . . . . . . . . . . . . . . . . 5

*Lindsey v. Lindsey*, 965 S.W.2d 586 (Tex. App.—El Paso 1998, no pet.) . . . . . 4

*McGalliard v. Kuhlmann*, 722 S.W.2d 694 (Tex. 1986) . . . . . . . . . . . . . . . . . . 7

*Medina v. Herrera*, 927 S.W.2d 597 (Tex. 1996) . . . . . . . . . . . . . . . . . . . . . . 13

*NCED Mental Health, Inc. v. Kidd*, 214 S.W.3d 28 (Tex. App.—El Paso 2006,
no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Ramos v. Frito–Lay, Inc.*, 784 S.W.2d 667 (Tex. 1990) . . . . . . . . . . . . . . . . . . 13

*Saenz v. Family Sec. Ins. Co. of Am.*, 786 S.W.2d 110 (Tex. App.—San
Antonio 1990, no writ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*San Jacinto Methodist Hosp. v. McCoy*, No. 14-12-00682-CV, 2013 WL
3009318 (Tex. App.—Houston [14th Dist.] no pet.) (mem. opinion) . . . 11

*Schneider v. Esperanza Transmission Co.*, 744 S.W.2d 595 (Tex. 1987) . . . . . 10

*TTHR Ltd. P'ship v. Moreno*, 401 S.W.3d 41 (Tex. 2013) . . . . . . . . . . . . . . 7, 11

*TXI Transp. Co. v. Hughes*, 306 S.W.3d 230 (Tex. 2010) . . . . . . . . . . . . . . . . 10

*Wrenn v. G.A.T.X. Logistics, Inc.*, 73 S.W.3d 489 (Tex. App.—Fort Worth 2002, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## TEXAS STATUTES

Tex. Civ. Prac. & Rem. Code § 74.351(j) (West 2015) . . . . . . . . . . . . . . . . . . 13

Tex. Civ. Prac. & Rem. Code § 74.351(r)(5) (West 2015) . . . . . . . . . . . . . . . 13

Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6) (West 2015) . . . . . . . . . 13, 15

Tex. Civ. Prac. & Rem. Code Ann. § 74.402 (West 2015) . . . . . . . . . . 14, 16, 17

Tex. Civ. Prac. & Rem. Code Ann. § 74.403 (West 2015) . . . . . . . . . . . . . . . 16

## TEXAS RULES

Tex. R. App. P. 47.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## STATEMENT OF THE CASE

This is an interlocutory appeal challenging the adequacy of preliminary medical malpractice expert reports under Chapter 74 of the Civil Practice and Remedies Code. 2 CR 228. After surveillance video showed a nurse violently attacking Flora Mendez—an elderly and defenseless woman with dementia who depended on skilled nursing staff to provide for all of her daily needs—Mendez[1] sued Morningside Ministries d/b/a Morningside Ministries at the Manor, the Morningside Ministries Foundation, Inc. (collectively "MSM"), and Quintin Berry, a MSM employee. 1 CR 1. Mendez timely served three expert reports initially. 1 CR 85-89; 1 CR 138-49; 1 CR 150-56. All three defendants objected. 1 CR 67-84; 1 CR 116-31; 1 CR 157-65. Mendez served additional reports to address the Defendants' concerns, and they again objected and moved to dismiss Mendez's case. 1 CR 299-300; 1 CR 306-21; 2 CR 1-9. After reviewing the reports, the trial court overruled the Defendants' objections and denied their motions to dismiss. 2 CR 224-25. MSM appealed; Berry did not. 2 CR 228; 2 CR 236-40.

---

[1] Because Mendez suffers from dementia, her daughter serves as her next friend in this litigation. 1 CR 103.

## STATEMENT REGARDING ORAL ARGUMENT

The issues in this appeal involve well-settled law and expert reports that easily exceed the threshold requirements of the statute. For that reason, Mendez does not believe oral argument will assist the Court in resolving this dispute. If, however, the Court wishes to hear oral argument in this case, Mendez will attend and present argument.

# ISSUES PRESENTED

1.  Under the Texas Supreme Court's 2013 opinion in *Potts*, if preliminary expert reports are sufficient to support direct liability claims against an employee, then they are also sufficient to support vicarious liability claims against the employer relating to that employee's actions. Here, Mendez sued Berry on direct liability theories, and she also sued MSM on vicarious liability theories arising from Berry's actions. Mendez served expert reports on Berry and Berry objected to those reports. The trial court overruled those objections and Berry did not appeal. Mendez's reports are therefore sufficient to support her direct liability claims against Berry. **Are Mendez's expert reports, which support her direct liability claims against Berry, likewise sufficient to support her vicarious liability claims against MSM arising from Berry's conduct?**

2.  Under *Potts*, if a plaintiff asserts direct and vicarious liability claims against a defendant, the plaintiff is only required to support one of those theories—of direct or vicarious liability—before her case against that defendant can proceed. Here, Mendez served sufficient vicarious liability reports against MSM. **Do Mendez's expert reports adequately address at least one theory of liability against MSM?**

3.  Alternatively, even if this Court examines the reports to determine whether they support Mendez's direct liability claims against MSM, Mendez's reports meet the low statutory threshold. Mendez timely served reports from a well-qualified physician explaining that the standard of care required MSM to provide Mendez with an environment free from abuse. That report described how MSM breached that standard of care when it permitted Mendez to be violently physically and emotionally abused in her room on MSM premises by a MSM employee. Finally, that report provided a physician's expert opinion that, if MSM had provided Mendez a safe environment, then she would not have been slapped, hit, abused, and threatened by a MSM employee. That report went one step further and explained how being slapped, hit, abused, and threatened by Berry caused Mendez to feel physical pain and mental anguish—the relief requested by her petition. **Do Mendez's reports inform MSM of the specific conduct she called into question, and provide a basis for the trial court to conclude that her claims have merit?**

## STATEMENT OF FACTS

On December 6, 2013, Flora Mendez was admitted to MSM. 1 CR 334. She was 84 years-old, 5 feet 2 inches tall, and weighed 123 pounds. 1 CR 334. She had dementia, could not speak, and could not walk. 1 CR 334. She had difficulty swallowing, so she received all of her food and water through a feeding tube. 1 CR 334. She was totally dependent on MSM staff to help her get into and out of bed, bathe, dress and groom herself, use the toilet, and perform all activities of daily living. 1 CR 334.

After she arrived at MSM, Mendez's family noticed that she had a number of injuries staff had not documented, had not investigated, and could not explain. 1 CR 334-35; 1 CR 348. Mendez's medical records also indicate that she began behaving in a way that was consistent with abuse. 1 CR 334. In addition, several of Mendez's personal items were missing. 1 CR 335. For these reasons, Mendez's daughter placed a video camera in her mother's room. 1 CR 336.

On March 31, 2014, the camera captured Quintin Berry, a MSM employee, violently attacking a defenseless Mendez. 1 CR 336-37. The video shows Berry:

- slapping Mendez in the face;

- hitting her several times on the top of her head;

- pointing his finger in her face in a threatening way;

- jerking her face around with his hand to make her look at him while he threatened her;

- poking her hard in the cheek and nose several times;

- yanking her face up toward him;

- grabbing and twisting her head before pushing her down into a wheelchair;

- roughly pulling her up and pushing her down;

- twisting her wrist backwards; and

- miming punching motions like he was going to punch her in the face.

1 CR 336-37. When Mendez's daughter saw the video the next day, she called the police, who went to MSM and took Mendez to the emergency room. 1 CR 325; 1 CR 348. Emergency room doctors found that Mendez had been assaulted. 1 CR 325. Mendez received treatment for her injuries, and was eventually transferred to a different nursing home. 1 CR 325.

Mendez's family sued Berry and MSM. 1 CR 3. Mendez timely served her expert reports. 1 CR 68; 1 CR 117; 1 CR 307. All three Defendants filed objections and motions to dismiss. 1 CR 67-84; 1 CR 116-31; 1 CR 157-65; 1 CR 299-300; 1 CR 306-21; 2 CR 1-9. The trial court eventually overruled those objections and denied those motions to dismiss. 2 CR 224-25. MSM appealed; Quintin Berry did not. 2 CR 228; 2 CR 236-40.

## SUMMARY OF THE ARGUMENT

The Texas Supreme Court's 2013 opinion in *Potts* contains two holdings:

1.     When a patient asserts vicarious liability claims against a health care provider employer based on the actions of its health care provider employee, if the patient's expert reports are adequate to support her direct liability claims against the employee, then as a matter of law, those reports are also adequate to support her vicarious liability claims against the employer.

2.     When a patient asserts direct and vicarious liability claims against a health care provider, so long as the patient serves expert reports supporting at least one of the liability theories, the patient has satisfied the statute and her case must not be dismissed.

Here, Mendez asserted direct liability claims against Berry. She timely served expert reports, he challenged them, the trial court rejected his challenge, and he did not appeal. Mendez's expert reports are therefore sufficient to support her direct liability claims against Berry. Under *Potts*, since Mendez's expert reports are sufficient to support her direct liability claims against Berry as a matter of law, they are also sufficient to support her vicarious liability claims against MSM.

Under *Potts*' additional holding, Mendez is not required to serve expert reports to support both her direct and vicarious liability theories against MSM—since Mendez's reports are adequate to support her vicarious liability claim against MSM, her claims against MSM are not frivolous and must not be dismissed.

## I.     THE EXPERT REPORT HURDLE IS A LOW ONE.

### A.     The Standard Of Review Supports Affirmance.

A trial court's determination of the adequacy of an expert report is reviewed for a clear abuse of discretion. *See Am. Transitional Care Ctrs. of Texas, Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001). "An appeal directed toward demonstrating an abuse of discretion is one of the tougher appellate propositions." *Lindsey v. Lindsey*, 965 S.W.2d 586, 592 (Tex. App.—El Paso 1998, no pet.). Therefore, unless the trial court acted arbitrarily, unreasonably, and without reference to guiding rules or principles in denying MSM's "motion to dismiss for insufficient expert report," an appellate court must affirm the trial court's judgment. *See Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex. 1997).

### B.     Expert Reports Simply Must Be A Good Faith Effort To Describe The Applicable Standard Of Care, How That Standard Was Breached, And The Causal Relationship Between That Breach And The Claimant's Injuries.

Claimants in health care liability claims must serve expert reports on the issues of standard of care, breach, and causal relationship. *See Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). While these reports need not marshal all the plaintiff's proof, they must fulfill two purposes. *Palacios*, 46 S.W.3d at 879. "First, the report

must inform the defendant of the specific conduct the plaintiff has called into question." *Id*. "Second, and equally important, the report must provide a basis for the trial court to conclude that the claims have merit." *Id*. "However, to avoid dismissal, a plaintiff need not present evidence in the report as if it were actually litigating the merits." *Id.* "The report can be informal in that the information in the report does not have to meet the same requirements as evidence offered in a summary-judgment proceeding or at trial." *Id.* A trial court's "determination of whether a plaintiff's expert report is adequate is not a merits determination, but rather a preliminary determination designed to expeditiously weed out claims that have no merit." *Loaisiga v. Cerda*, 379 S.W.3d 248, 263 (Tex. 2012).

## II.    MENDEZ HAS EASILY CLEARED THAT HURDLE HERE.

### A.    Since Mendez's Expert Reports Are Sufficient To Support Her Direct Liability Claims Against Berry, As A Matter Of Law They Are Also Sufficient To Support Her Vicarious Liability Claims Against MSM Arising From Berry's Actions.

The Texas Supreme Court's 2013 opinion in *Potts* is on all fours with the instant case. *See Certified EMS, Inc. v. Potts*, 392 S.W.3d 625 (Tex. 2013). There—like here—a hospital nurse assaulted a patient. *See id*. at 626. There—like here—the patient sued the nurse's employer on theories of direct and vicarious liability arising from that intentional tort. *See Certified EMS, Inc. v. Potts*, 355 S.W.3d

683, 686 (Tex. App.—Houston [1st Dist.] 2011, pet. granted), *aff'd* 392 S.W.3d 615 (Tex. 2013) (explaining, in greater detail than the Supreme Court's opinion, plaintiff's allegations that the employer was vicariously liable for its employee's intentional tort of assault). There—like here—the employer sought dismissal "because the patient's expert reports did not specify how the [employer] was directly negligent." *Potts*, 392 S.W.3d 626. Before the Supreme Court, however, the employer only challenged the reports' adequacy as to its direct liability; it did not challenge the reports' adequacy on vicarious liability theories. *See id.*

The *Potts* Court unanimously held that plaintiffs are not required to serve expert reports to support vicarious liability theories against an employer when they have already served expert reports to support direct liability theories against an employee. *See id.* at 632. That Court recognized "when a health care liability claim involves a vicarious liability theory, either alone or in combination with other theories, **an expert report that meets the statutory standards as to the employee is sufficient to implicate the employer's conduct under the vicarious theory**." *Id.* (emphasis added). Importantly, the Court reached that conclusion in a case involving an assault by an employee and a plaintiff's claim that the employer should be vicariously liable for that intentional tort. *See Potts*, 355 S.W.3d at 686. Since *Potts*, therefore, employers facing vicarious liability must challenge the sufficiency of the expert

reports against their employees. *See, e.g., TTHR Ltd. P'ship v. Moreno*, 401 S.W.3d 41, 45 (Tex. 2013).

Here, Mendez asserted direct liability claims against Berry as well as claims against MSM for its vicarious liability for Berry's actions. 1 CR 109-10. Although Berry initially challenged Mendez's expert reports, the trial court overruled those complaints and found Mendez's reports adequate as to Berry. 2 CR 225. Berry did not appeal that order. 2 CR 236-40. Because Berry did not challenge the trial court's finding that Mendez's reports were adequate, those reports are adequate as a matter of law. *See, e.g., McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986) (unchallenged findings "are binding on an appellate court unless the contrary is established as a matter of law...."). Under *Potts*, since the reports are sufficient to support Mendez's direct liability claims against Berry, they are likewise sufficient to support Mendez's vicarious liability claims against MSM arising from Berry's actions. *See Potts*, 392 S.W.3d at 632.

The trial court did not abuse its discretion in overruling Berry's complaints. *See, e.g., E.I. DuPont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995) (abuse of discretion means more than that the reviewing court would have ruled differently). Since the trial court did not abuse its discretion in overruling Berry's complaints, it **could not** have abused its discretion in overruling MSM's complaints

about Mendez's vicarious liability claims because those vicarious liability claims arise from Berry's actions. *See Potts*, 392 S.W.3d at 632. *Potts* disposes of this entire appeal. *See id*. This Court should overrule MSM's arguments and affirm the trial court's January 20, 2015 order.

**B.     Mendez Is Not Required To Serve A Report From A Medical Expert Specifically Explaining How MSM Is Vicariously Liable For Its Employee's Intentional Torts.**

1.     When a plaintiff asserts direct and vicarious liability claims, so long as the plaintiff serves adequate reports as to at least one liability theory, the whole case should proceed.

Under *Potts*, when a plaintiff serves expert reports that are sufficient to support the direct liability claims against the employee, those expert reports are also—as a matter of law—sufficient to support the vicarious liability claims against the employer arising from the employee's actions. *See id*. But *Potts* contains another holding that governs MSM's claims here. *See id*. at 630-31. The *Potts* Court unanimously held, "an expert report that adequately addresses at least one pleaded liability theory satisfies the statutory requirements, and the trial court must not dismiss in such a case." *Id*. at 632. That Court recognized, "[a] report need not cover every alleged liability theory to make the defendant aware of the conduct that is at issue." *Id*. at 630. That Court continued, "[i]f a health care liability claim contains at least one viable liability theory, as evidenced by an expert report meeting the statutory requirements, the claim cannot

be frivolous" "and the trial court must not dismiss in such a case." *Id.* at 631, 632. For those reasons, the Supreme Court concluded that an expert report that describes the standard of care, how that standard was breached, and how that breach caused the plaintiff's injuries fulfills the dual requirements of putting the health care provider on notice of the specific conduct called into question and demonstrating to the trial court that the claim is not frivolous. *See id.* at 630-31. *Potts* means that so long as Mendez presented an adequate expert report on either her direct liability theory or on her vicarious liability theory, this Court must affirm the trial court's order denying MSM's motion to dismiss. *See id.*

> a.      Mendez's direct liability reports against Berry support her vicarious liability claims against MSM and satisfy the requirement of serving reports on at least one liability theory against MSM.

Under *Potts*, Mendez's vicarious liability claims against MSM are supported by the expert reports that support her direct liability claims against Berry. *See id.* And since Mendez served adequate expert reports to support her vicarious liability claims against MSM, her claims against MSM are not frivolous and cannot be dismissed. *See id.* Mendez has therefore satisfied *Potts'* requirement of serving adequate expert reports to support at least one liability theory against MSM. *See id.*

b.      MSM provides no valid authority otherwise.

Every single case MSM relies on to support its first argument was handed down before the Texas Supreme Court issued its opinion in *Potts* in 2013. *See* Br. of Appellant at 8-10. Furthermore, the majority of the cases MSM cites are not even Chapter 74 med-mal expert report cases. *See id.* Specifically, MSM cited:

- *NCED Mental Health, Inc. v. Kidd*, 214 S.W.3d 28 (Tex. App.—El Paso 2006, no pet.) (med-mal expert report opinion issued 7 years before *Potts*);

- *Wrenn v. G.A.T.X. Logistics, Inc.*, 73 S.W.3d 489 (Tex. App.—Fort Worth 2002, no pet.) (non-med-mal expert report opinion issued 11 years before *Potts*);

- *Saenz v. Family Sec. Ins. Co. of Am.*, 786 S.W.2d 110 (Tex. App.—San Antonio 1990, no writ) (non-med-mal expert report opinion issued 23 years before *Potts*);

- *Buck v. Blum*, 130 S.W.3d 285 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (summary judgment opinion in med-mal case issued 9 years before *Potts*);[2]

- *TXI Transp. Co. v. Hughes*, 306 S.W.3d 230 (Tex. 2010) (non-med-mal expert report opinion issued 3 years before *Potts*);

- *Schneider v. Esperanza Transmission Co.*, 744 S.W.2d 595 (Tex. 1987) (non-med-mal expert report opinion issued 26 years before *Potts*);

---

[2] *Buck* is an important opinion. There, the employer raised the same "no vicarious liability for an employee's intentional torts occurring outside the scope of employment" arguments MSM has raised here. 130 S.W.3d at 288-90. The employer, however, raised that argument through a motion for summary judgment. *See id.* The trial court granted the summary judgment, finding that the employer was not vicariously liable for the employee's intentional tort, and the Fourteenth Court of Appeals affirmed. *See id.* at 287. Even MSM's own authority recognizes that such an argument is premature at the expert report stage. *See id.*; *see also Christus Health Ark-La-Tex v. Curtis*, 412 S.W.3d 44, 47 n.5 (Tex. App.—Texarkana 2013, pet. denied).

-10-

- *Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788 (Tex. 2006) (non-med-mal expert report opinion issued 7 years before *Potts*);

- *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794 (Tex. 2004) (non-med-mal expert report opinion issued 9 years before *Potts*);

- *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472 (Tex. 1995) (non-med-mal expert report opinion issued 18 years before *Potts*).

*See* Br. of Appellant at 8-10. The reason MSM can present no authority to support its position is that, since *Potts*, there is none. Every case on this issue since *Potts* supports Mendez. *See, e.g., Moreno*, 401 S.W.3d at 45; *see also Curtis*, 412 S.W.3d at 48; *San Jacinto Methodist Hosp. v. McCoy*, No. 14-12-00682-CV, 2013 WL 3009318, at *5 n.3 (Tex. App.—Houston [14th Dist.] no pet.) (mem. opinion); *Ennis Reg'l Med. Ctr. v. Crenshaw*, No. 05-12-001428-CV, 2013 WL 2446374, at *5 (Tex. App.—Dallas 2013, no pet.) (mem. opinion); *Children's Med. Ctr. of Dallas v. Durham*, 402 S.W.3d 391, 404 (Tex. App.—Dallas 2013, no pet.); *Christus Spohn Health Sys. v. Johnson*, No. 13-12-00778-CV, 2013 WL 2298471, at *3 (Tex. App.—Corpus Christi 2013, no pet.) (mem. opinion).

Again, in *Potts*, the employee committed the intentional tort of assault, just like Berry did here. *Compare* 392 S.W.3d at 626, 632, *with* 1 CR 105-10. The *Potts* Court recognized that an expert report that was adequate with regard to the intentional tort committed by the employee was also *de facto* adequate with regard to the employer's

-11-

vicarious liability arising from that intentional tort. *See* 392 S.W.3d at 632. If an employer could not be liable for its employee's intentional torts committed during working hours but outside the scope of her employment, and if the expert-report stage were the proper time to raise that challenge, then the Supreme Court could not have reached the conclusion it did. *See, e.g., Curtis*, 412 S.W.3d at 47 n.5. Because MSM has presented no basis for this Court to disregard *Potts*, this Court should affirm the trial court's order. *See, e.g., Dallas Area Rapid Transit v. Amalgamated Transit Union Local No. 1338*, 273 S.W.3d 659, 666 (Tex. 2008).

>c.  At the expert report stage, MSM cannot establish that it is not liable for Berry's assault of a MSM patient as a matter of law.

In *Potts*, the Supreme Court rejected the employer's claim that it should be relieved from liability—at the expert report stage—for its employee's intentional torts. *See Potts*, 392 S.W.3d at 632. This Court should reach the same result here. *See, e.g., Dallas Area Rapid Transit*, 273 S.W.3d at 666. That is especially true because MSM's argument—that, as a matter of law, it cannot be vicariously liable for Berry's intentional torts—is simply wrong. *See, e.g., G.T.E. Sw., Inc. v. Bruce*, 998 S.W.2d 605, 617-18 (Tex. 1999) (employer liable for employee's intentional tort). Even when an employer does not authorize an employee to commit an intentional tort, the employer may be vicariously liable for employee actions that are closely connected

with his authorized duties. *See id.; see also Medina v. Herrera*, 927 S.W.2d 597, 601 (Tex. 1996); *Ramos v. Frito–Lay, Inc.*, 784 S.W.2d 667, 668 (Tex. 1990).

2. The statute does not require an expert opinion regarding vicarious liability.

MSM contends that Mendez's expert reports "fail to explain how MSM can be held vicariously liable for Berry's intentional torts – conduct that is outside the scope of employment under Texas law." Br. of Appellant at 8. But such an opinion is simply not required by the statute. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6) (West 2015). The statute requires the plaintiff to serve an expert report describing the applicable standard of care, how it was breached, and how that breach caused the plaintiff's damages—nothing more. *See, e.g.*, Tex. Civ. Prac. & Rem. Code § 74.351(j) (West 2015) ("Nothing in this section shall be construed to require the serving of an expert report regarding any issue other than an issue relating to liability or causation."). This Court should decline MSM's invitation to issue *ex post facto* legislation from the bench to add a requirement to the statute. *See, e.g., Fitzgerald v. Advanced Spine Fixation Sys. Inc.*, 996 S.W.2d 864, 867 (Tex. 1999).

3. Furthermore, no medical expert would be statutorily qualified to provide the legal opinion MSM seeks.

The statute requires reports from medical experts. *See, e.g.*, Tex. Civ. Prac. & Rem. Code § 74.351(r)(5) (West 2015). Section 74.402 specifically provides that an

expert witness in a claim against a health care provider must be qualified on the basis of training or experience to provide *medical* opinions. *See* Tex. Civ. Prac. & Rem. Code Ann. 74.402(c) (West 2015) (emphasis added). Specifically, in reviewing the expert's qualifications, the trial court must:

> consider whether, at the time the claim arose or at the time the testimony is given, the witness:
>
> > (1) is certified by a licensing agency of one or more states of the United States or a national professional certifying agency, or has other substantial training or experience, in the area of health care relevant to the claim; and
> >
> > (2) is actively practicing health care in rendering health care services relevant to the claim.

*Id.* A medical expert simply would not be qualified to opine that an employee was acting in the scope of his employment such that vicarious liability would attach. *See id.* Because such an interpretation would lead to absurd results—requiring a medical expert to provide a purely legal opinion—this Court should reject it. *See, e.g, City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-26 (Tex. 2008) (courts must avoid statutory interpretation that leads to absurd results).

> 4.    The trial court did not abuse its discretion in denying MSM's motion to dismiss.

MSM asks this Court to add a term to the statute requiring plaintiffs to provide legal opinions in their medical expert reports. *See* Br. of Appellant at 8-10. That

request is contrary to the plain language of the statute, directly contradicted by the Supreme Court's opinion in *Potts*, and would lead to absurd results. The trial court therefore acted reasonably and within guiding principles when it overruled MSM's objections and denied its motion to dismiss. *See* Tex. Civ. Prac. & Rem. Code § 74.351(r)(6); *Palacios*, 46 S.W.3d at 878-79. For those reasons, this Court should reject MSM's unfounded request to reverse the trial court's order.

## C. Alternatively, Mendez's Reports Constitute A Good Faith Effort With Regard To Her Direct Liability Claim.

Since Mendez timely served expert reports to support her vicarious liability theory against MSM, she satisfied the requirement of serving expert reports against MSM. *See Potts*, 392 S.W.3d at 632. The Texas Supreme Court has recognized that "the trial court must not dismiss in such a case." *Id*. Because Mendez has timely served expert reports that support at least one of her claims against MSM, review of MSM's second issue is not "necessary to final disposition of the appeal." Tex. R. App. P. 47.1. For that reason, this Court should not even review MSM's allegations that Mendez's expert reports fail to provide adequate support for their direct liability claims against MSM. *See id*.; *see also Laredo Med. Group v. Gonzalez*, 155 S.W.3d 417, 431 (Tex. App.—San Antonio 2004, pet. denied) (addressing more issues than necessary to disposition of appeal would violate constitutional ban on advisory

opinions). To address any concern the Court may have about providing MSM anything less than complete appellate review, however, Mendez will briefly explain why the expert reports she served are adequate to support even her direct liability claims against MSM.

> 1.  Mendez's expert reports adequately describe the standard of care applicable to MSM.

David E. Mansfield is a double board certified family practice and wound care physician. 1 CR 323. He graduated from medical school in 1979 and performed research at Harvard Medical School. 1 CR 323-24; 1 CR 331. He has served as medical director and hospice medical director for a number of facilities like MSM. 1 CR 324. He has 35 years of experience treating nursing home patients like Mendez, and at the time he authored his expert report, he was a physician managing the medical care of patients like Mendez in hospitals and long term care facilities. 1 CR 324. He is therefore qualified to provide an expert opinion in this case. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 74.402, .403 (West 2015).

In his expert report, Dr. David Mansfield provided his opinion that the standard of care required MSM, *inter alia*, to "provide Flora Mendez with an environment free from abuse and treat her with courtesy, consideration, dignity, and respect." 1 CR 326. MSM's own literature repeats that standard of care. 1 CR 375 ("You have a right to:

2. safe, decent and clean conditions; 3. be free from abuse and exploitation; 4. be treated with courtesy, consideration, and respect"); 1 CR 381 ("BY LAW [sic], every Texas nursing facility resident has the right... To live in safe, decent and clean conditions."). Dr. Mansfield's opinion is further bolstered by the expert reports of nurse Suzanne Frederick[3] and nursing home administrator Barbara Darlington,[4] which he relied on and incorporated into his report. 1 CR 327; 1 CR 337; 1 CR 348. Specifically, Frederick provided her opinion that MSM "had a duty to protect [Mendez] from harm" because "each resident has the right to be free from abuse...." 1 CR 337. Similarly, Darlington's report explains that the standard of care required MSM to "provide [Mendez] with an environment free from abuse...." 1 CR 348.

Therefore, Mendez's expert reports establish that the standard of care required MSM to create a safe environment for vulnerable patients like Mendez, so that they would be safe from abuse. *Compare* 1 CR 109, *with* 1 CR 326, 1 CR 337, *and* 1 CR

---

[3] Since 1999, Frederick has worked for the United States Department of Justice as a Nursing Home Consultant, investigating nursing homes to determine their compliance with applicable standards of care. 1 CR 332. She is a Registered Nurse, and she has a Bachelor of Science decree in nursing and a Master of Science degree in nursing administration. 1 CR 332. She is therefore qualified to provide an expert opinion on standard of care and breach. *See* Tex. Civ. Prac. & Rem. Code § 74.402.

[4] Darlington has been a Licensed Nursing Home Administrator since 1985, and she consults with nursing homes, assisted living facilities, and adult day care centers on regulatory, accreditation, and compliance issues. 1 CR 347. She is also a Registered Nurse, has a bachelor of science in nursing, a master of science in nursing, and is a licensed adult nurse practitioner. 1 CR 351. She is therefore qualified to provide an expert opinion on standard of care and breach. *See* Tex. Civ. Prac. & Rem. Code § 74.402.

348. These opinions inform MSM of the specific standard of care Mendez has called into question. *See, e.g., Palacios*, 46 S.W.3d at 879. These opinions also provide a basis for the trial court to conclude that Mendez's claims have merit. *See id.* For that reason, they satisfy the statute's standard of care requirement. *See, e.g., Bowie*, 79 S.W.3d at 52.

> 2. Mendez's expert reports sufficiently describe how MSM breached that standard of care.

Dr. Mansfield also provided his expert opinion that MSM breached that standard of care. 1 CR 327. To reach that opinion, he reviewed the medical records of Baptist Medical Center, where Mendez was admitted to the emergency room after she was removed from MSM. 1 CR 323. In those records, Mendez's physicians documented their diagnosis that she had been abused. 1 CR 328. He also reviewed Mendez's medical records from MSM, as well as the video showing Berry violently abusing Mendez on March 31, 2014. 1 CR 323. In his report, Dr. Mansfield explained that the video and the medical records demonstrate that MSM breached its duty to Mendez to provide her a safe environment, free from abuse. 1 CR 327. Nursing experts Frederick and Darlington echoed Dr. Mansfield's opinion on breach. 1 CR 340 (Frederick's opinion that MSM breached the standard of care by failing to prevent Berry from abusing Mendez); 1 CR 349 (Darlington's opinion that MSM breached the

standard of care by failing to provide Mendez with an environment free from abuse).

These opinions inform MSM of the conduct Mendez has alleged breached the standard of care. *See, e.g., Palacios*, 46 S.W.3d at 879. These opinions also provide a basis for the trial court to conclude that the claims have merit. *See id.* For that reason, they satisfy the statute's breach requirement. *See, e.g., Bowie*, 79 S.W.3d at 52.

3.     Dr. Mansfield's expert report sufficiently describes how MSM's breach of standard of care caused Mendez's injuries.

In reaching his opinion on causation, Dr. Mansfield relied on the medical records from the Emergency Room at Baptist Medical Center, where Mendez was taken the day after Berry assaulted her. 1 CR 323. Dr. Mansfield's report recited that the physicians who treated Mendez at the Emergency Room found that Mendez had been assaulted, and recorded that diagnosis in her medical records. 1 CR 328. Dr. Mansfield also reviewed the video before reaching his opinion that the breaches of the standard of care by Berry and MSM caused Mendez's injuries. 1 CR 328.

At the hearing on the challenges to her expert reports, Mendez showed the trial court the video. 1 RR 23-26. On the video, the trial court saw Berry slapping Mendez in the face, hitting her several times on the top of her head, pointing his finger in her face in a threatening way, jerking her face around with his hand to make her look at

him while he threatened her, poking her hard in the cheek and nose several times, yanking her face up toward him, grabbing and twisting her head before pushing her down into a wheelchair, roughly pulling her up and pushing her down, twisting her wrist backwards, and miming punching motions like he was going to punch her in the face. 1 CR 336-37. Perhaps by design, much of this abuse did not leave physical marks. 1 CR 336-37. Since Mendez does not have the ability to speak and cannot communicate with gestures, she was not able tell her physicians where she was hurt. 1 CR 324.

Because Dr. Mansfield had watched the video, he was able to explain that the abuse Mendez endured "cause[d] physical pain and suffering from the physical contact of the hitting, slapping, rough handling and twisting of her body." 1 CR 328-29. He described "the fear, anger, and anxiety that was visible in Ms. Mendez' expressions and reactions on the video of March 31, 2014," and linked that evidence to the mental pain and suffering and emotional distress Mendez's petition alleged. 1 CR 329. He provided his opinion that MSM's breaches of the standard of care "deprived Flora Mendez of dignity and respect by failing to... prevent the abuse of March 31, 2014. 1 CR 329. He explained, "[h]ad the standard of care been followed, Flora Mendez would not have gone on to suffer further assault, abuse, physical and mental pain and suffering, emotional distress and deprivation of dignity and respect

on March 31, 2014." 1 CR 329. Finally, Dr. Mansfield provided his opinion "based on a reasonable degree of medical probability that as a proximate cause of the violations of the standard of care by Morningside Manor, Flora Mendez was caused to suffer abuse, assault, physical and mental pain and suffering, emotional distress and was deprived of dignity and respect." 1 CR 329.

These opinions inform MSM of the conduct Mendez has alleged caused her injuries. *See, e.g., Palacios*, 46 S.W.3d at 879. These opinions also provide a basis for the trial court to conclude that the claims have merit. *See id*. For that reason, they satisfy the statute's requirement of demonstrating how the health care provider's breach of the standard of care caused the patient's injuries. *See, e.g., Bowie*, 79 S.W.3d at 52. This Court should overrule MSM's final argument on appeal.

### CONCLUSION AND PRAYER

For the foregoing reasons, Appellee Rosa Lee Rodriguez, as Next Friend of Flora Mendez, respectfully requests that this Court affirm the January 20, 2015 order of the 166th Judicial District Court in all respects, and for all such further relief to which she may be entitled at law or in equity.

Respectfully submitted,

 */s/ Beth Watkins*
Beth Watkins
State Bar No. 24037675
LAW OFFICE OF BETH WATKINS
926 Chulie Drive
San Antonio, Texas 78212
(210) 225-6666–phone
(210) 225-2300–fax
Beth.Watkins@WatkinsAppeals.com

Attorneys for Appellee
Rosa Lee Rodriguez, as Next Friend of
Flora Mendez

# CERTIFICATE OF SERVICE

I certify that I electronically served a true and correct copy of this brief, in accordance with rule 9.5 of the Texas Rules of Appellate Procedure, on the 4th day of September, 2015 on the following counsel of record:

Mr. Harold J. Lotz, Jr.                          Counsel for Appellant
Ms. Alexis A. Scott
LOTZ AND ASSOCIATES
1210 Nacogdoches Road
San Antonio, Texas 78209
hlotz@lotzandassociates.com
ascott@lotsandassociates.com

Ms. Nissa Dunn                                   Counsel for Appellant
HOUSTON DUNN, PLLC
4040 Broadway, Suite 440
San Antonio, Texas 78209
(210) 775-0880–phone
(210) 826-0075–fax
nissa@hdappeals.com

/s/ Beth Watkins
Beth Watkins

Attorney for Appellee

## CERTIFICATE OF COMPLIANCE

I certify that this brief contains 5,122 words, exclusive of the portions excluded by Texas Rule of Appellate Procedure 9.4(i).

*/s/ Beth Watkins*
Beth Watkins

Attorney for Appellee